## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

SHACKLEFORD V. BECK.

JUNE 25TH, 1885.

1. CONSTRUCTION OF STATUTES—*Mechanic's liens.*—The remedy by lien under Code 1873, chapter 115, sections 2, 3 and 4, is a creature of statute unknown to the common law ; and in order to entitle a contractor to its benefit, he must strictly pursue the statute.

2. IDEM—*Account of work and material—Definition.*—The statute requires that a contractor seeking to secure the benefit of its provisions, shall file in the clerk's office an account (which is an itemized or detailed statement of the transactions to which it relates) of work done and materials furnished ; and, therefore, a paper in the following words, *viz. :* "To balance of account rendered for work and labor done and material furnished for your house," is not sufficient to create the lien provided by the statute.

3. IDEM—*Actual notice unavailing.*—The contractor, having failed to secure a lien on the house by his omission to fulfill the requirements of the statute, a purchaser of the house from the owner is not affected with liability for the contractor's claim, by reason even of actual notice of the account thereof.

Argued at Staunton and decided at Wytheville.

Appeal from three decrees of circuit court of Clarke county, one rendered in vacation, August 1, 1883, in the cause of John H. Shackleford *against* C. A. Beck and others; another rendered May 23, 1884, in the consolidated causes of Shackleford *against* Beck and als, and of Candler *against* Russell.

The object of the first-named suit was to enforce a mechan-

ic's lien on a house built by Shackleford for Beck in Berryville, which, after the recordation of what Shackleford deemed an account in the clerk's office, for the purpose of acquiring a mechanic's lien on the house Beck sold to Candler. At the hearing the circuit court decreed against Shackleford, who appealed from the decree.

Opinion states the case.

*Marshall McCormick,* for the appellant.

*A. Moore, Jr.,* for the appellee.

FAUNTLEROY, J., delivered the opinion of the court.

The transcript of the record of these causes (which were virtually one), shows the following facts: The appellant, who is a carpenter and general contractor, under a written contract, dated March 1st, 1882, built for the appellee, C. A. Beck, on his lot in the town of Berryville, in the summer of 1882, a frame dwelling-house, for the contract price of $927. During the progress of the work, some changes were made in the plan, necessitating extra-work, for which extra-charges were made to the amount of $105. The house was completed and turned over to the owner, C. A. Beck, on 29th September, 1882; and an account was rendered to the said Beck by the appellant, which shows the work done and the material furnished; and, after crediting the partial payments, strikes a balance due of $667.

On the 6th October, 1882, appellant filed, in the clerk's office of Clarke county, a paper in the following words, viz: "To balance of account rendered, for work and labor done, and material furnished, for your house;" and he made affidavit to the correctness of it, and appended to it a statement, declaring his intention to claim the benefit of the lien given by law to mechanics. This paper was duly acknowledged and admitted to record.

C. A. Beck, the appellee, in November, 1882, about two months after the recordation of this aforesaid paper, sold and conveyed the said property to L. W. Candler, for the consideration of $1500, of which he paid in cash $750 to McDonald and Moore, attorneys for the vendor, Beck, and retained in his hands the residue to meet certain liens upon the property. To the December rules, 1882, of the circuit court of Clarke county, the appellant filed his bill, alleging his lien upon the property, and asking its enforcement; and, in the alternative, alleging the non-residence of C. A. Beck, and that both Candler, and McDonald and Moore, had money in their hands belonging to him, and praying that it might be attached and subjected to his debt. Candler and Moore both answered the bill, and attack the validity of appellant's lien.

The question involved in the controversy is, whether the appellant duly complied with the requirements of the law in filing his account, as embodied in the paper aforesaid, filed by him, under the 3rd and 4th sections of chapter 115 of the Code of 1873?

The judge of the circuit court was of the opinion that the said paper relied on by the appellant to sustain his lien, was "invalid and ineffectual for such purpose, because it is not drawn and recorded as the law requires, and that the relief prayed for in said bill, so far as it is based upon said paper, should be denied, and doth so decide."

Sections 2, 3 and 4 of chapter 115 of the Code of 1873, provide the machinery by which a mechanic or general contractor may avail himself of the lien there given. There have been several amendments of these sections, but they relate only to the *time* within which the account must be filed in the clerk's office. Two modes of securing a lien are provided: one, under the second section, by recording the written contract, when there is one; and the other, under section four, by filing in the clerk's office a true account of the work done or material furnished, sworn to by the claimant, with a statement attached, declaring

his intention to claim the benefit of the lien, and setting forth a brief description of the property. A mechanic may proceed under either the one or the other of these modes; and this whether there be a written contract or not. *Merchants & Mechanics Savings Bank* v. *Dashiell*, 25th Gratt. 621.

The proceeding in this case was under the 3d and 4th sections, obviously for the reason that the recordation of the written contract would not have covered the *extra work*. The appellant elected to proceed under the 3d and 4th sections; and the question to be determined is, whether he complied with the conditions prescribed in these said sections?

The 3d section enacts, "All artizans, builders, mechanics, lumber-dealers, and others performing labor or furnishing materials for the construction, repair or improvement of any building or other property, shall have a lien, as hereinafter provided, upon such property," &c.

The 4th section prescribes what shall be done by one seeking to secure the benefit of the provisions contained in the 3d section, as follows: "A general contractor, wishing to avail himself of the lien given him by the preceding section, shall file, within thirty days after the completion of the work, in the clerk's office of the county or corporation court of the county or corporation in which the property upon which a lien is sought to be secured is situated,   *   *   a true account of the work done or material furnished, sworn to by said claimant or his agent, with a statement attached signifying his intention to claim the benefit of said lien, and setting forth a brief description of the property upon which he claims the lien. It shall be the duty of the clerk in whose office such account and statement shall be filed, as hereinbefore provided, to record the same in a book kept for that purpose; and from the time of such filing all persons shall be deemed to have notice thereof."

The appellant contented himself with filing with the clerk a statement of a *balance* of *money* due *per account rendered*—previously *to C. A. Beck.* To comply with the statute, the account

need not have been rendered to Beck; but it must have been filed in the clerk's office and *recorded* by the clerk. The language of the statute is clear, simple and unambiguous, and whatever may have been the reason for requiring the contractor to file his account for recordation, it has prescribed in express, plain and unmistakable language, *the way*—and the *only way*—in which the purpose it had in view can be effected. There was no such lien, as that provided for by this statute, known to the common law, or to the courts of equity. It is purely a creation of the statute, and it must be availed of, if at all, upon the terms and conditions which the statute prescribes.

The appellant, in his petition for a supersedeas, says : " The statute requires a *true* account—not an *itemized* account; and an account may be true though it be not *itemized*." It is difficult to conceive how, without *items*, there can be an account—which is an itemized or detailed statement of the transactions to which it relates. But the difficulty in this case is not alone that it is not an itemized account, but that it is not an account of the things required by the statute—of *work done* and *material furnished.* But if it be true, as insisted, that when a contract is made in gross for the erection of a building, and supplying the material entering into its construction, the law is complied with by filing a statement of the amount due and owing for the work, it is not applicable in this case, because a considerable portion of the work was done, and material furnished, under verbal contract or contracts, outside of and not included in the written contract with Beck; all of which are embraced in the itemized account rendered by appellant to Beck, but which account was not filed by appellant in the clerk's office to be recorded as the law requires. It was indispensably necessary for appellant to have filed this account in the clerk's office, and the law makes it the duty of the clerk to record it, so as to affect all persons with notice of the lien claimed, and to warn and protect all subsequent purchasers or incumbrancers. *Boston & Co.* v. *C. & O. Railroad Co.*, 76 Va. 182.

Philips in his Mechanics' Liens, section 349, page 576, says: "Many reasons for such explicitness in the notice as to the character of the work, and the amount and character of the materials contributed to the building are apparent. It prevents fraud on the part of the sub-contractor, and collusion by the contractor; enables the owner to ascertain the correctness and reasonableness of the demands; and gives the most definite information to purchasers and incumbrancers."

The statute now under consideration extends to certain classes of operatives and others of the people embraced in its provisions, a security for their claims, that no other class enjoys; and it is no hardship, in consideration of this, to require them to comply with the terms upon which the benefaction is offered to them. The feature of the mechanic's lien law, now under consideration, is not peculiar to the Virginia law. Many of the states of the Union have precisely the same provision (see *Maryland Code*, 1878, pp. 695–702, sections 11 and 9), and in some of them the question which this court is asked to determine in this case has been considered and decided.

In the case of *Davis* v. *Livingston*, 29 California, it is said, "The remedy is an extraordinary one, and, therefore, all the provisions of the act must be strictly complied with." (Citing *Walker* v. *Hauss-Hijo*, 1 Cal. 185; *Bottomly* v. *Grace Church*, 2 Cal. 91.)

In the case of *Noll* v. *Swineford*, 6 Penn. 187, Henry Noll, (carpenter) of the township of Penn, in the county of Union, and state of Pennsylvania, filed his claim for $579.65 as well against a certain brick building or house of worship, erected on part of lot No. 104, as the piece of ground or curtilage appurtenant therto situate, etc.: which sum of $579.65 the said Henry Noll claims to be due him for carpenter work and labor done and performed in and about the erection of said building as a carpenter, and for materials, to-wit: lumber furnished by the said Henry Noll between the 29th day of June, 1843, and the 23d February, 1844, etc. Bell, J., after instructing the

jury that the claim filed under the mechanic's lien law of 1836, for materials furnished, and work and labor done, must state the amount claimed for each as a distinct item, or the omission will render it totally invalid, says, "It has been felt, that the extraordinary remedy afforded by our laws to mechanics and material men requires to be properly guarded, to prevent it from becoming a source of unjust annoyance and injury to those whose property is liable to be made the subject of its action. It has accordingly, from time to time, attracted legislative attention, until the fruit of former experience was embodied in the act of the 16th of June, 1836, which provides, *inter alia*, that the claim or statement filed in the office of the prothonotary shall set out the 'amount or sum claimed to be due, and the nature or kind of the work done, or the kind and amount of materials furnished, etc., as the case may be.' As this statute confers a large license upon the class of meritorious citizens whose interests it is intended to advance, our courts have found it necessary, for the protection of others, to hold them to at least a substantial compliance with the requirements of the acts of assembly. This observance is, indeed, absolutely essential to the safety of owners, purchasers and other lien creditors, as furnishing some *data* by which, in case of dispute, they may be enabled to search out the truth. The clue may be an imperfect one, but in this consideration will be found additional reason why it should be afforded to those who otherwise are left to grope in obscurity, without even a glimmer of light by which to direct research. As the law calls for nothing unreasonable at the hand of him who would fasten an incumbrance upon the property of his neighbor, no just ground of complaint is afforded by insisting upon a rigid adherence to its provisions. The information it exacts is, or ought to be, entirely within the power of the creditor to give, and an omission to put it on the record is, therefore without excuse. *Rehrer* v. *Zeigler*, 3 Watts and Serg. 258; *Thomas* v. *James*, 7 Watts and Serg. 381: *Witman* v. *Walker*, 9 Watts and Serg. 186.

"Indeed, the great object of the statute in pointing out the characteristics of the statement to be filed, would, in the end, be utterly defeated were we to indulge the laxity of practice which ignorance and carelessness conspire to introduce and perpetuate. It is manifest that the act contemplates work and labor done, and materials furnished, as distinct and separate items, which, to be sure, may enter into and make part of the same claim, but not necessarily so, and, when so, not properly to be confounded or treated as one. The amount claimed is to be set out; and the spirit of the act, looking to its evident object, demands that this should be done in reference to each subject forming a distinct matter of account. The provision fails of perfect satisfaction by the averment of a sum in gross, for the end sought is a check upon fraud and imposition; and to secure this, it is almost as important that those interested in the building to be encumbered, should know the extent of the claim springing from each specification, as that they should be informed of the whole amount demanded." In the case of *Carson* v. *White*, 6 Gill. 17, the court says: "No mechanic has, in virtue of the act of assembly, a lien on the house which he has built or repaired, unless he has filed in the office of the clerk of Baltimore county court, a statement of his demand, and in that statement has given, not only the sum due, but also the nature or kind of the work done, and the kind and amount of the materials furnished, and the time when the materials were furnished and the work done. The mechanic or other person, then, who would claim a lien, in virtue of this act of assembly, in his statement to be filed in the office of Baltimore county court, must not *only state the sum claimed*, but must also, *in the statement to be filed there*, for the inspection and scrutiny of all persons who are or may become interested in the premises, give a *bill of particulars*, whereby all who may be interested can ascertain, not only the amount demanded, but the correctness and reasonableness of the demand. The *items* must be furnished, in

order that other creditors and persons interested may know for what services and what materials the sum alleged to be due is claimed, and thus have an opportunity of proving the injustice or extravagance of the demand. All this must be done in terms sufficiently explicit and comprehensive, in order to prevent the frauds which otherwise might be practised upon others."

In the case of *Trustees of the German Lutheran Church* v. *Heise & Co.*, 44 Md. 454, the claim was for materials furnished, and the notice of the intention to claim the lien states the amount of the claim as charged in an itemized account, but "failed to state what the claim was for, whether work or materials." The court says, "As decided in the case of *Thomas* v. *Barber*, 10 Md. 380, the object of the notice is to impart information to the owner of the amount and character of the claim intended to be fixed as a lien upon the property, so that he may protect himself in his future dealings with the contractor. The requirement of the law in this respect imposes no hardship upon the party asserting the lien, but only secures to the owner as a means of protection what the legislature intended for his benefit. The notice here would seem to be fatally defective."

In the case at bar, if the appellant has failed to secure the benefit of the statute, such failure is due wholly to want of attention to the express and plain provisions of the law. We do not think that the circuit court erred in holding that the paper filed with complainant's bill, as Exhibit No. 1, whereby he sought to secure a mechanic's lien upon the property referred to in the said bill, is invalid and ineffectual for such purpose, because it is not drawn and recorded as the law requires, and that no lien was created upon the property of Beck, the appellee, by appellant filing in the clerk's office the said paper; and that L. W. Candler purchased the property free and discharged of any lien or incumbrance in favor of the appellant. But although Candler, the purchaser, cannot be affected with notice by implication of law, because of the failure to file and

record the statement and account for labor and material as the law prescribes, yet it is insisted by appellant that Candler and Moore, now interested in the property, or the proceeds of it, had actual notice of appellant's claim. There is not any evidence in the record even tending to show that either of them knew of or suspected the existence of appellant's claim, until after their rights had attached to the property and its proceeds; and the allegations in the bill on this point are expressly denied in the answers of both Candler and Moore.

But suppose, in fact, they did have notice, would that have cured the error or failure of appellant to file his account and statement according to the requirment of the statute? Suppose appellant had actually showed the items of his account to Candler, the purchaser of the property, and not filed it in the clerk's office at all, could he thereby assert a lien upon the property? The question in the case is, did appellant proceed according to law so as to acquire a lien on the property under the third and fourth sections of the statute?

Candler is a complete purchaser. He paid to Beck all the purchase money, reserving, by the contract, enough to pay the liens which he assumed to pay by the contract; and he has received his deed for the property. Subsequent leinors, Moore, Russell, and Riely & Tucker, have all acquired claims on the fund, without notice of appellant's claim, and for valuable consideration. They have been diligent and active in asserting their rights; he has failed to pursue the plain and express provisions of the statute. Appellant complains of the decree rendered in the court below in the suit of Candler *v.* Russell, heard with this cause of Shackleford *v.* Beck, &c. This was a decree perpetuating an injunction against the enforcement of a judgment in favor of Russell against McDonald and Moore, out of the purchase money still in the hands of Candler, reserved expressly to pay liens upon the property obtained before Russell's judgment; and of this he cannot complain.

We think there is no error in the decrees complained of, and they must be affirmed.

LACY, J., and HINTON, J., concurred with FAUNTLEROY, J.

LEWIS, P., and RICHARDSON, J., dissented.

DECREES AFFIRMED.