# Staunton.

## S. V. R. R. COMPANY V. MILLER.

### OCTOBER 1ST, 1885.

1. APPELLATE COURT—*Objections there—Review.*—Defects in notice, or in service of notice, by sub contractor to owner under mechanics' lien law, can not be objected to for the first time in appellate court. Nor can refusal of court below to award new trial be reviewed, unless all the evidence is in some proper mode certified to appellate court.

2. MECHANICS' LIENS—*Notice—Affidavit—Liability of owner.*—As soon as sub-contractor has furnished labor or materials, he may give notice to owner, and may furnish the affidavit at any time within twenty days after completion of building, or termination of work. And without regard to state of accounts between owner and general contractor, owner, upon proper notice and affidavit, is liable, absolutely, to sub-contractor for amount named in affidavit. Code 1873, chap. 115, § 5, amended Acts 1874–5, p. 437.

3. IDEM—*Statute construed—Two-fold remedy.*—Section 8 secures to sub-contractor benefit of lien given general contractor by section 4, provided notice is given by former before lien is discharged. This remedy is additional to that conferred by section 5, which gives to sub-contractor, upon compliance with its requirements, the right to charge owner personally. Under section 8, regard is had to state of accounts between owner and general contractor; under section 5, none is had.

4. IDEM—*General contractor's failure—Owner's liability.*—Fact of general contractor's failure, and owner's necessity to complete the work, does not affect owner's liability for amount due sub-contractor for labor or materials.

5. EQUITABLE ASSIGNMENTS—*Drawee's liability—Payee's remedy.*—It is well settled, that where one man having funds in another's hands, draws on him an order directing them to be paid to a third party, for value, such order will pass to the payee the title to said funds, which

title a court of equity will enforce.  But drawee may refuse to accept; in which event he is not liable *at law* to payee; but payee may then return order to drawer; or may sue drawer; or may sue in equity for the fund.

Error to judgment of circuit court of Augusta county, rendered May 20th, 1884, for $612.81, with interest from October 12th, 1882, and costs, in favor of the plaintiff in the action of assumpsit of S. P. H. Miller *against* The Shenandoah Valley Railroad Company.

Opinion states the case.

*W. H. Travers,* for the plaintiff in error.

*H. St. G. Tucker,* for the defendant in error.

LEWIS, P., delivered the opinion of the court.

It appears that in March, 1882, the Shenandoah Valley Railroad Company entered into a written contract with one Julius C. Holmes for the construction of certain depot buildings along the line of .its railroad in this state.  That during the spring and summer of that year, the defendant in error, who was the plaintiff in the court below, furnished lumber to the contractor, Holmes, which was used in the execution of his contract with the defendant company.  That on or about the 10th of October, of the same year, the said contractor failed, and thereupon, pursuant to the contract between the parties, the company, through its chief engineer, took charge of the work, and soon thereafter completed it.  That about the time of the contractor's failure, various orders were drawn by him on the company in favor of third parties, for valuable consideration, of which the company had notice, though the same were not accepted by the company.  That at the time the company took charge of the work it owed the contractor $1,200, which at the time of the trial of the present action in the lower court had been re-

duced to $700. That at the time of the contractor's failure he was indebted to the plaintiff, for lumber so furnished, in the sum of $612.81. That soon thereafter, and before the completion of the work by the company, the plaintiff delivered to the company a notice in writing, verified by affidavit, of which the following is a copy:

"October 12, 1882.

Julius C. Holmes, general contractor.
     In account with S. P. H. Miller, furnisher of materials.

Virginia—Roanoke county, s. c.:
     This day, before me, the undersigned, notary public in and for said county, the said furnisher of materials, S. P. H. Miller, made oath that the above account of $612.81, against the said general contractor, Julius C. Holmes, is true and unpaid, and is due to him from the said general contractor for materials furnished for the following depots along the line of the Shenandoah Valley railroad, to-wit: For freight depot at Waynesboro, $67.20; for freight depot at Lofton, Augusta county, $34.48; for freight depot at Buchanan, Botetourt county, $238.56; for passenger depot at Glenwood, Rockbridge county, $157.30; for freight depot at Midvale, Rockbridge county, $50.57; for depot platform steps at Waynesborough, $12; $52.60 for depot on the line in Virginia, not now known, all of which amounts are itemized, but not in account attached hereto, under a subcontract between sub-contractor and said general contractor, under a contract between the latter and the said owner. Given under my hand, this 13th day of October, 1882.
               (Signed.)      Lucien H. Cocke, N. P."

And to this notice was appended the following:

"I, the said sub-contractor, S. P. H. Miller, hereby certify my intention to claim, for the amount of the above account,

$612.81, on the above described buildings, the benefit of the lien provided by the Code of 1873, chapter 115, and the acts amendatory thereof. Given under my hand, this 13th day of October, 1881.

S. P. H. Miller, Sub-contractor."

"To the Shenandoah Valley Railroad Company.

Owner of the above described property is hereby notified, that I shall hold it liable for the above account. Given under my hand, this 13th day of October, 1882.

S. P. H. Miller, Sub-contractor."

And upon the foregoing appears the following endorsement:

"Delivered copy of the within to W. W. Coe, chief engineer S. V. R. R., in his office at Roanoke, Oct. 13th, 1882.

(Signed.)        S. P. H. Miller."

"Subscribed and sworn to by S. P. H. Miller, before me, this 18th day of Feb., 1884.

(Signed.)        Joseph B. Woodward, N. P."

Payment of the above account not having been made, the present action was instituted against the company, to which it appeared, and issue was joined on the plea of *non-assumpsit.* The case having been heard, a verdict and judgment were rendered in the plaintiff's favor for the sum of $612.81, with interest thereon from the 12th of October, 1882, until paid, and costs. And thereupon the defendant applied for and was awarded a writ of error and *supersedeas.*

The first objection urged is, that the written notice of the plaintiff to the company was not served in accordance with the terms of the statute, which enacts as follows: "It shall be sufficient to serve any process against, or notice to a corporation, on its mayor, rector, president, or other chief officer, or in his

absence from the county or corporation in which he resides, or in which is the principal office of the corporation, against or to which the process or notice is, if it be a city or town, on the president of the council or board of trustees, or in his absence, on the recorder or any alderman or trustee; and if it be not a city or town, on the cashier or treasurer; and if there be none such, or he be absent, on a member of the board of directors, trustees or visitors.  *  *  *  *.  Service on any person under this section, shall be in the county or corporation in which he resides; and the return shall show this, and state on whom and when the service was, otherwise the service shall not be valid." Code 1873, ch. 166, sec. 7.

It is insisted that, inasmuch as the return in the present case does not show that the chief engineer, upon whom the notice was served, *resided* at the time of service at Roanoke, the service is insufficient, and therefore that the plaintiff has not brought himself within the provisions of the statute under which his claim is asserted, namely, the statute commonly known as the "mechanic's lien law."

It is also objected that the affidavit accompanying the notice in the present case is defective, because not in compliance with the last-mentioned statute, which requires the affidavit to show "a correct account of the amount due" the sub-contractor by the contractor.  And in support of this objection, reference is made to the recent case of *Shackleford* v. *Beck*, ante p. 573.

In that case, it is true, this court held, construing the 4th section of chapter 115 of the Code of 1873, which requires a general contractor, in order to avail himself of the lien given by the preceding section, to render on oath "a true account of the work done or material furnished," that the rendering of a mere statement, showing the balance claimed to be due the contractor, was not a sufficient compliance with the terms of the statute, but that the *items* of the account must be furnished; or, in other words, the contractor must "give *a bill of particu-*

*lars,* whereby all who may be interested can ascertain not only the amount demanded, but the correctness or reasonableness of the demand." This, said Judge Fauntleroy, speaking for the court, the statute prescribes in clear and unmistakable language, and as no such lien as that provided for by this statute is known to the common law or to courts of equity, but "is purely a creature of the statute, it must be availed of, if at all, upon the terms and conditions which the statute prescribes."

Such was this court's construction of the section then under review; that section requiring "a true account" to be furnished, and the fifth section, under which the plaintiff in the present action proceeded, requiring "a correct account," etc. And while the construction thus placed upon the fourth section must be considered as the law of the state and respected as such, yet we are of opinion that under the circumstances neither of the objections to which we have referred can be sustained in the present case. Neither was made in the court below; but both are for the first time raised in the appellate court. If the company desired to rely upon them, it should have brought them to the attention of the circuit court; and not having done so, clearly it is now too late to raise them here. The object of the notice is to apprise the owner of the sub-contractor's claim, and to warn him against making payment to the general contractor. And if the notice be for any reason defective, or if it be not properly served, it is the undoubted privilege of the owner in a suit or action against him by the contractor, to defend on that ground. But these defects or objections he may waive, as in the present case was done by the defendant in not objecting in the circuit court to the introduction in evidence before the jury of a copy of the written notice served by the plaintiff, with the return thereon; and having thus waived them there, the right to insist upon them now is gone. Powell on Appellate Proceedings, p. 336, § 66; *Ballard* v. *Whitlock,* 18 Gratt. 235; *Dillard* v. *Thornton,* 29 Id. 392.

The subject of the next assignment of error is the refusal of the circuit court to give to the jury certain instructions asked for by the defendant. The first is as follows:

"If the jury believe from the evidence that Julius C. Holmes contracted with the Shenandoah Valley Railroad Company to construct for it certain depot buildings, the said contractor to furnish all the necessary material and labor therefor; that the said company was to retain a part of the contract price as security for, and until the completion of all the said buildings, and the said plaintiff contracted with the said Holmes to furnish materials for the said buildings or any of them, then the plaintiff is not entitled to recover unless they shall further find from the evidence:

"1. That the plaintiff, after the completion of the last of the depot buildings to be constructed by Holmes, and within twenty days from such completion, gave notice in writing to the said defendant of the value of the materials furnished by him.

"2. That within twenty days from said completion, the plaintiff furnished the said company with an affidavit, showing a correct account of the amount due him by the said Julius C. Holmes.

"3. That at the time of the service of the notice aforesaid by the plaintiff on the defendant, there was money due, or afterward became due, to the said Holmes by the said company under his said contract with the said company."

The principal question sought to be raised by this instruction was, that the notice and affidavit required by the statute, to entitle the sub-contractor to the benefit of its provisions, must, in order to have that effect, be furnished *after*, and not before the entire completion of the work by the general contractor. Obviously, this is not the true construction of the statute.

By an act, approved March 31, 1875, sections 4 and 5 of ch. 115 of the Code were amended and re-enacted; and section 5 as amended, under which the notice and affidavit in the present

case were furnished, provides as follows: "Any sub-contractor, or any person contracting to furnish materials about a building or other improvement, for a general contractor, or other person than the owner, may give notice in writing to the owner of such building or other improvement, stating the value of the labor performed or materials furnished, and shall, within twenty days after such building or other improvement is completed, or the work thereon otherwise terminated, furnish the owner thereof with an affidavit showing a correct account of the amount due to said party by the contractor and remaining unpaid to the sub-contractor or person contracting to furnish materials, and the said owner shall be liable for the amount of such claim to said sub-contractor or person contracting to furnish materials: provided, the same does not exceed the amount named by the said claimant in the affidavit hereinbefore required; and in that event, the owner of the building or other improvement shall be liable to the claimant for the amount named in said affidavit, and no more." Acts 1874–75, p. 437.

It is plain from the language thus employed, that the intention of the legislature was to authorize notice to be given after the materials have been furnished by the sub-contractor, and to prescribe a limitation within which the essential affidavit "showing a correct account of the amount due" to the sub-contractor shall be furnished, namely, twenty days after the completion of the work, and no longer. In other words, the sub-contractor may give notice as soon as the materials are furnished, and may at the same time, if he please, furnish the required affidavit, or at any time thereafter, provided the same is furnished within twenty days after the work is completed. If he delays furnishing the affidavit until after the expiration of that time from the completion of the work, then his right to avail himself of the benefit of the fifth section of the statute is gone. This construction is not less favorable to the owner than that contended for by the company, as it apprises him in ad-

vance of the completion of the work of the claim of the sub-contractor, and certainly the language of the statute admits of no other reasonable interpretation.

In *Roanoke Land and Improvement Co.* v. *Karn & Hickson,* ante p. 589, Judge Lacy, in delivering the opinion of the court, said: "When the labor has been performed and the materials furnished, the notice may be given and the affidavit furnished *at any time* within twenty days after the building has been completed. This is the termination provided by law; there is no other."

Nor does the third clause of the instruction which was asked for by the defendant correctly propound the law. The language of the statute is explicit, that when notice has been given and affidavit furnished, "the owner *shall* be liable for the amount of such claim" to the sub-contractor absolutely, "provided, the same does not exceed the amount named by the said claimant in the affidavit (?) hereinbefore required: and in that event, the owner of the building or other improvement shall be liable to the claimant for the amount named in the said affidavit (?), and no more." Doubtless the word "affidavit," as it here occurs in the amended statute, was by inadvertence inserted in place of the word "notice," as it appears in the original statute, in the Code, ch. 115, sec. 5. At all events, it is very clear that the liability of the owner to the sub-contractor, after proper notice has been given and affidavit furnished, is not dependent upon the state of the accounts between the owner and the general contractor at the time such notice and affidavit is furnished, or at any time thereafter. And therefore the circuit court very properly refused to instruct the jury that the plaintiff could not recover unless they were satisfied, from the evidence, "that at the time of the service of the notice as aforesaid by the plaintiff on the defendant there was money due, or afterward become due, to the said Holmes by the said company under his said contract with the said company."

Nor is this view opposed by anything contained in the sixth

section of the statute, which provides, that if the account of the sub-contractor be furnished the owner, and is approved by the general contractor, or if after ten days notice to the latter of the filing of the said account with the owner, he shall fail to file with the owner any objection to the account, in either case the owner may pay the amount to the sub-contractor, and shall then be entitled to a credit for the amount so paid upon whatever may be due by him to the general contractor. Manifestly, it was not the object of this section in any way to affect the personal liability which by the preceding section is imposed upon the owner, in case the requisite notice and affidavit are furnished as provided by that section; but out of abundant caution, and as a matter of obvious justice to the owner, to declare, in express terms, his right to be credited, in his settlement with the general contractor, with any sum paid by him to the sub-contractor in pursuance of the provisions of this act.

Reference is also made to the eighth section; but it is equally plain that its provisions have no bearing on the question before us. It enacts that the lien of the general contractor, given by the fourth section, shall enure to the benefit of the sub-contractor or material man, to whom the general contractor may be indebted for work or materials, "provided, said sub-contractor, workman or other person, shall furnish notice to the owner of his claim against the general contractor before the amount of such lien is actually paid off and discharged."

By this section provision is made for securing to the sub-contractor the benefit of the *lien* which may have been acquired by the general contractor, provided, notice is given by the former before the lien is discharged. But the provision thus made is wholly independent of the provisions of the fifth section, which gives to the sub-contractor, after complying with its requirements, the right to charge the owner personally. In other words, the right conferred by the eighth section is in addition to that conferred by the fifth. But no *lien* can be acquired by the sub-contractor unless the requisite notice, which in this in-

stance is not required to be supported by affidavit, is given before the lien in favor of the general contractor has been paid off and discharged; whereas, under the fifth section, the subcontractor may hold the owner personally liable, whether he has settled in full with the general contractor or not.

And, since the language of the statute is plain, it is needless to look beyond it, or to speculate as to the policy which the legislature had in view. Enough, however, has been said to show that the theory of the statute is, that the party furnishing materials for the erection or repair of buildings on credit retains a claim to them after they have gone into the building; and, accordingly, ample remedies are provided to enable him to enforce it. Nor does this work injustice to the owner, who may protect himself by requiring security of the general contractor with whom he contracts, and through whom he impliedly contracts with those who furnish their labor, skill and materials, for the erection or repair of his buildings.

And it matters not that the general contractor, as in the present case, may fail and thereby become unable to proceed with the work, in consequence of which the same is completed by the owner himself. The claim of the sub-contractor is none the less meritorious on that account, nor any the less enforceable under the terms of the statute. The circuit court, therefore, very properly refused to give to the jury the second and last instruction asked for by the defendant, which is as follows: "The plaintiff is not entitled to recover, if the jury believe, from the evidence that the defendant contracted with Julius C. Holmes to construct the depot buildings for which the plaintiff furnished materials, and that it was a covenant of the said contract that the engineer of the defendant should at any time, when in his opinion, on account of the refusal or neglect of the said Holmes to prosecute said work with sufficient force to complete it within contract time, it was necessary to employ hands to complete the construction of the said buildings and pay them, and that in the exercise of such right the said engineer em-

ployed laborers to finish the said buildings, and expended in completing, or towards completing the same, the sum remaining due to the said Holmes, under his said contract with the defendant, or that the said defendant, before notice of the claim of the plaintiff as aforesaid, had notice of orders given by the said Holmes upon it sufficient with the sum required for the completion of the said buildings to absorb the full contract price for the construction of the said buildings by the said Holmes."

We have already seen that the right of the sub-contractor to charge the owner is not dependent upon the state of the accounts between the owner and the general contractor. But it may be further observed, in respect to this instruction, that it announces, as a proposition of law, that the sub-contractor is bound by the contract between the owner and the general contractor, although he may have no knowledge of the terms of the contract, or that any express contract between the parties had ever been entered into at all; which is clearly not the law of this State, however it may be elsewhere. Moreover, the instruction is faulty, in that it assumes that the mere notice by the company of the fact that orders had been drawn upon it by the general contractor, before it received notice of the sub-contractor's claim, absolved the company from liability to the sub-contractor, at least to the extent of the order so given. The instruction is founded on the theory that the orders operated as equitable assignments *pro tanto* of the moneys due by the company to the general contractor, and bind the company, whether accepted by it or not. But such is not the law. It is well settled, that where one man, having funds in the hands of another, draws an order upon the latter directing them to be paid to a third party, for valuable consideration, such order, according to the doctrine of equitable assignment, will pass the title to the payee. "But," as was said by Judge Tucker, in *Brooks* v. *Hatch,* 6 Leigh, 534, "the drawee, though he is the drawer's debtor, is not bound to accept his draft against his own will. The creditor has no right to compel his debtor to

become debtor to another man—(our statute authorizes this only in the case of assignments of assignable securities). The drawee may, therefore, refuse to accept; and in that case, *he* is not liable to the payee at all. * * * And if acceptance of the order be refused, three courses remain for the holder: he may either return it, in which case the parties are in *statu quo;* or he may sue the drawer upon it, the drawee having refused to accept it; or he may retain it, give notice to the person on whom it is drawn, not to part with the fund, and sue in equity for its recovery."

The same doctrine is held in the *First National Bank of Wellsburg* v. *Kimberlands,* 16 W. Va. 555, where it is said: "When a person having a demand due him assigns part of it to different persons, whether by separate orders in their favor or otherwise, they are valid equitable assignments *pro tanto,* and though, if the orders are not accepted, a court of equity will in no manner recognize these partial assignments or orders as equitable assignments, yet a court of equity in a suit in chancery will recognize and enforce them." See also 2 Story's Equity, sec. 1043, *et seq.*

But suppose, in such a suit in chancery, the drawee, not having accepted the orders, as in the present case, defends on the ground that after they were drawn, he was required by the valid judgment of a court of common law to pay the fund on which they were drawn to another person. Can it be doubted that such a defence, if established by proof, would be a complete answer to the suit of the assignee? Both reason and authority answer in the negative. And this being so, it is manifest that, in any view, the instructions asked for by the defendant were rightly refused.

It only remains to say, that the last assignment of error, which relates to the refusal of the circuit court to set aside the verdict, as being contrary to the law and the evidence, is not well taken. It does not appear from the record that the defendant excepted to the action of the court in that particular, nor

are the facts certified.    The bill of exceptions, which was taken
to the refusal of the court to instruct the jury as asked by the
defendant, sets forth that certain evidence, which is certified,
was introduced by the parties respectively; but the certificate
does not purport to be a certificate of all the evidence, and this
is the only certificate which appears in the record.    If the de-
fendant desired the action of the circuit court, in overruling its
motion for a new trial, to be reviewed by the appellate court, it
should have seasonably excepted, and asked that the facts be
certified.    But as that has not been done, it is impossible for
this court to pass on the merits of the motion, and the action
of the lower court must be presumed to have been right.

JUDGMENT AFFIRMED.