## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### N. J. STEIGLEDER & SON v. ALLEN.

#### June 13, 1912.

1. MECHANICS' LIEN—*Personal Liability of Owner—When to be Given.*—
The right of a sub-contractor to recover of the owner personally for
work done or material furnished to the general contractor is purely
the creation of statute, and can be availed of, if at all, only upon the
terms and conditions which the statute prescribes. The statute,
amongst other things, requires a notice from the sub-contractor to the
owner of the "nature and character of his contract and the *probable*
amount of his claim." A notice given *after* the work is completely
done or materials furnished, followed by the verified account required
by the statute, is not such a compliance with the statute as will fix a
personal liability on the owner. The statute contemplates notice
at an early period, before the material is furnished or the work is
completed.

Error to a judgment of the Circuit Court of Henrico county in
an action of debt. Judgment for the defendant. Plaintiffs
assign error.

*Affirmed.*

The opinion states the case.

*O'Flaherty & Fulton,* for the plaintiffs in error.

*Allen G. Collins,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action of debt was brought by plaintiffs in error,
N. J. Steigleder & Son, a partnership, against defendant in error,
Joseph E. Allen, to recover of the latter the sum of $1,039.00,
a balance alleged to be due from the defendant to the plaintiffs,
as sub-contractors with one R. H. Walton, a general contractor,
who had contracted with the defendant to build and construct

upon the latter's lot of land in Ginter Park, Henrico county, Virginia, a certain house. The declaration in the case, *inter alia,* charges that the defendant, as owner, on September 1, 1909, contracted with said Walton, general contractor, to build a concrete block house in Ginter Park for the defendant, for the sum of $8,000.00; that Walton, general contractor, on September 6, 1909, contracted with plaintiffs, as sub-contractors, to do the entire cement and concrete work in said house for the sum of $1,989.00; that plaintiffs completed their said work on January 31, 1910, and on February 18, 1910, gave notice, in writing, of said contract, and the work they had done, to the defendant, owner of said house; and that on June 20, 1910, before the expiration of thirty days after the completion of said building, the plaintiffs also gave another written notice to the defendant, and served upon him a verified copy of the account, showing that there was a balance of $1,039.00 then due by Walton to the plaintiffs for doing said cement and concrete work on the defendant's house; that, at the time of the service of the first notice, the defendant, Allen, had in his hands the sum of $8,000 due to Walton, the general contractor, under his aforesaid contract, and further alleged that, by reason of said facts, the defendant became, and was, under section 2479 of the Code of 1904, personally liable and indebted to the plaintiffs for the said sum of $1,039.00, the balance due them for said work.

The defendant, on October 29, 1910, appeared, and filed a written demurrer to said declaration, and set forth therewith in writing the grounds of the demurrer, among which, and the only one that we deem it necessary to consider, is that the notice of February 18, 1910, was not given by the plaintiffs to the defendant until after the plaintiffs had completed their part of the work, and that section 2479 of the Code required this notice to be given before or while the work was being done, and that it could not be given after the plaintiffs had completed their part of the work.

The defendant, also, on October 29, 1910, filed a special plea and the "particulars of his defense," but the circuit court, without ruling on the special plea or the "particulars of defense," entered the judgment to which this writ of error was awarded, sustaining the demurrer to the declaration, and giving judgment for the defendant for costs against the plaintiffs.

The question presented is whether the notice given by the plaintiffs, after their work was completed and their materials furnished, was a sufficient compliance with the provisions of section 2479 of the Code to bind the defendant personally for the debt asserted by the plaintiffs.

At common law there was no *privity* of contract between the owner of property and a sub-contractor with a general contractor who had alone contracted with such owner to construct a building or other improvements upon his property, and, therefore, such sub-contractor had no legal claim which he could maintain in a court of law or equity against the owner for work done or materials furnished under his (the sub-contractor's) contract with the general contractor; but, by our statute, originating in the act appearing in the Acts of 1869–70, p. 444, the common law rule was abrogated, and a right of action in the sub-contractor against the owner of the property built upon or improved was provided in certain circumstances and upon well-defined conditions. Up to the enactment of the statute, as amended, appearing in the Code of 1887 as section 2479, it was not very clearly determinable whether the notice required of the sub-contractor to be given to the owner of the work to be done or material to be furnished by the sub-contractor was to be done before the work was done or the materials furnished by him, as a condition precedent to his right to demand and have of the owner pay for the work done and materials furnished, or whether such notice, after the work was completed, was sufficient; but, by section 2479 of the Code of 1887, the sub-contractor might give notice of the "nature and character of his contract and the probable amount of his claim," and after he had performed his work, and furnished the material, and the structure was completed, or the work thereon otherwise terminated, he was required to furnish the owner with a "correct account, verified by affidavit, of his claim against the general contractor for the work done or materials furnished, and of the amount due," and to furnish a like account to the general contractor, which account was to be furnished to the owner and the general contractor within thirty days from the completion of the building or structure, or from the time when the work thereon was otherwise terminated.

When the legislature came to re-enact said statute, it, by an act approved February 28, 1894, (Acts 1893–4, p. 523) framed it as follows: "Any sub-contractor may give notice in writing to the owner, or his agent, stating the nature and character of his contract, and the probable amount of his claim; and if such sub-contractor shall, at any time after the work done or material furnished by him, and before the expiration of thirty days from the time such building or structure is completed or the work thereon otherwise terminated, furnish the owner thereof, or his agent, and also the general contractor, with a correct account, verified by affidavit, of his claim against the general contractor for the work done or materials furnished, and of the amount due, the owner shall be personally liable to the claimant for the amount due to said contractor by said general contractor; provided the same does not exceed the sum in which the owner is indebted to the general contractor at the time the notice is given or may thereafter become indebted by virtue of his contract with said general contractor."

That statute, which is now section 2479 of the Code of 1904, and controls this case, may have been intended by the legislature, as plaintiffs contend, "to broaden and widen the scope of the statute, and to give the sub-contractor additional rights to any of those that had been conferred upon him by or under any of the former laws, and sought to give him a remedy which would be adequate to his varying needs"; but clearly it was not intended to put the owner, contracting with a general contractor for improvements on his property, at a greater disadvantage, by allowing the sub-contractor for a part of the work or materials himself to give the owner notice of his demand against the general contractor either before, during, or after the performance of the work. While it was the object of the statute, under certain conditions, to make "the owner personally liable to the sub-contractor for the amount due him by the general contractor," it was also intended that the owner should be apprised of the probable amount of the sub-contractor's claim against the general contractor, so that the owner, as said by this court in *Shenandoah Valley R. Co.* v. *Miller*, 80 Va. 826, might protect himself by not paying to the general contractor an amount exceeding the sum due him at the time the sub-contractor's notice was given, or he would

thereafter become indebted to the general contractor by virtue of the owner's contract with him.

How unfairly the statute might be made to operate against the owners of property designing to put improvements thereon under contract with that large class of persons engaged as general contractors in such business, if the interpretation of the statute contended for by the plaintiffs in this case could be sustained, cannot be better illustrated than by reference again to the facts appearing in the record.

On June 20, 1910, plaintiffs served upon the defendant a second notice, setting forth that they furnished their material and completed their work on January 31, 1910, and that they gave their first notice February 16, 1910. After this second notice was given to the defendant, the plaintiffs, on June 23, 1910, filed a mechanic's lien against the defendant's lot and building. Other sub-contractors with Walton, the general contractor, filed notices with the defendant, and some of such sub-contractors filed mechanics' liens against defendant's house and lot, and The Miller Manufacturing Company filed a bill in chancery to enforce against said house and lot a lien filed by it, which bill was for the benefit of all other sub-contractors who had filed liens to the extent of the amount then due by defendant, Allen, to Walton, the general contractor. The defendant had, with Walton, on June 20, 1910, a settlement, by which it was ascertained that he, defendant, was indebted to Walton in the sum of $1,196.68, while the claims asserted by the sub-contractors amounted to $3,496.84.

It will be observed that the statute, *supra,* requires (1) a notice from a sub-contractor to the owner of the "nature and character of his contract and the *probable* amount of his claim"; (2) within thirty days after the materials are furnished or the work to be done by the sub-contractor is completed, he is to furnish the owner with "a correct account, verified by affidavit, of his claim against the general contractor for the work done and materials furnished, and of the amount therefor due"; and (3) serve upon the general contractor a like account. If the service upon the owner of the required verified account of the sub-contractor could be considered as sufficient to make the owner personally liable to the sub-contractor for the amount of the latter's claim against

the general contractor, then it would have been needless to require a notice from the sub-contractor to the owner before he performed the work or furnished the material required under his contract with the general contractor. The language of the statute unmistakably indicates that the notice must be given before the actual amount of the claim is ascertained, before the material is furnished or the work completed, to apprise the owner of the nature of the contract under which the sub-contractor will have a debt due to him; while the requirement that the sub-contractor shall, within a prescribed period, serve the owner and general contractor with a verified account, etc., was intended to have the owner informed as to the actual amount of the sub-contractor's claim against the general contractor.

The right of the sub-contractor to recover of the owner, personally, in such a case, like the right of such a contractor to enforce a mechanic's lien against the owner's property, is purely the creation of the statute, and it must be availed of, if at all, upon the terms and conditions which the statute prescribes. Section 2479 of the Code prescribes in express, plain, and unmistakable language the way, and the only way, in which an owner of property can be bound personally to a sub-contractor for a debt due him from the general contractor, with whom the owner alone contracted for improvements upon his property. As was said by this court in *Shackelford* v. *Beck*, 80 Va. 573, with reference to certain portions of the mechanic's lien statutes: "As the law calls for nothing unreasonable at the hand of him who would fasten an encumbrance upon the property of his neighbor, no just ground of complaint is afforded by insisting upon a rigid adherence to its provisions."

The declaration in this case does not set out facts sufficient to entitle the plaintiffs to a personal judgment against the defendant for the amount of the demand made upon him, or for any part thereof, and, therefore, the judgment of the circuit court, sustaining the demurrer thereto, is right and is affirmed.

*Affirmed.*