# Staunton

H. L. COLEMAN, STONE TILE AND SUPPLY COMPANY, INC., ADAMS, PAYNE & GLEAVES, INC., AND J. W. HODGES, TRADING AS JOSEPH W. HODGES AND SONS v. W. J. PEARMAN, R. A. COVINGTON AND L. C. PRIDDY.

September 22, 1932.

Present, Holt, Epes, Hudgins, Browning and Chinn, JJ.

The opinion states the case.

*Hart & Hart, Engleby & Engleby* and *Irvin A. Harvey,* for the appellants.

*Caldwell, Chaney & Loyd* and *Horace M. Fox,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

The only question involved in this appeal is whether or not the appellants have perfected their respective liens as subcontractors under the mechanics' lien statutes.

W. J. Pearman, R. A. Covington and L. G. Priddy, appellees, filed a bill in chancery alleging that in August, 1929, they, as owners of a certain parcel of land in the city of Roanoke, made a contract with Roanoke Construction and Lumber Corporation, as general contractor, to erect a building thereon, according to certain plans and specifications, for a sum not to exceed $19,650 on a cost plus basis; that the owners were compelled to complete the building because of the failure of the general contractor and its consequent inability to comply with the terms of the contract; that a final settlement with the general contractor showed that the owners had overpaid it in the sum of $1,022.75; that H. L. Coleman, Stone Tile and Supply Co., Inc., Adams, Payne and Gleaves, Inc., and J. W. Hodges, trading as Joseph W. Hodges and Sons, appellants, filed in the clerk's office for recordation their respective memoranda for mechanics' liens on forms prescribed for general contractors; that Roanoke Iron and Bridge Works, Inc., and J. G. Wilson Corporation, as subcontractors, filed their respective memoranda for mechanics' liens, and gave notice to the owners of the amount and character of their respective claims; that at the time of receiving these notices the owners were not indebted to Roanoke Construction and Lumber Corporation; that the appellants were not general contractors; and that the recordation of the memoranda of the several parties did not constitute valid liens on the property, but were clouds upon the owners' title.

The prayer of the bill was that the court declare the said memoranda, as recorded, invalid as mechanics' liens,

and that they be so marked of record. A demurrer was filed to this bill and overruled.

From the answers of the respondents and the evidence, it appears that the complainants, the owners of the land, owned all the stock in a certain corporation, *i. e.*, Jefferson Electric Company; that Roanoke Construction and Lumber Corporation, at the time of entering into the building contract, owed Jefferson Electric Company the sum of $5,000, and that before the building was completed this indebtedness had been increased to $7,680; that no part of the consideration for this debt was used in and about the buildings in question; and that, with the consent of Roanoke Construction and Lumber Corporation, the owners had paid the debt out of the sums due under the building contract.

The trial court held that the payment of this debt to Jefferson Electric Company constituted an assignment *pro tanto* of the sum due the general contractor, which assignment, by the provisions of Code, section 6435, was void as to laborers and materialmen who had perfected their liens in the manner prescribed by chapter 270 of the Code (section 6426 *et seq.*). From this decision the owners sought an appeal, which was refused.

Later—*i. e.*, December 24, 1930—the trial court entered a decree declaring valid the liens claimed by Roanoke Iron and Bridge Works, Inc., and J. G. Wilson Corporation, but held invalid the liens claimed by the appellants. It is the latter part of this decree that appellants are seeking to reverse by this appeal.

Appellants now admit that they are not entitled to liens on the property, as general contractors; they contend, however, that they have complied with all the provisions of Code, section 6428, except the giving of written notice to the owners of the amount and character of their claims, and that in this case notice was not necessary, because the owners had actual knowledge of all the facts which a formal notice would have given.

It is to be observed that a general contractor may

perfect his lien without giving notice to the owner, the filing of the required memorandum for recordation in the clerk's office being sufficient, but Code, section 6428, expressly requires that a subcontractor comply with the provisions of section 6427, *i. e.,* file certain memoranda required for the perfection of a general contractor's lien, "and in addition, give notice in writing to the owner of the property, or his agent, of the amount and character of his claim."

There is no privity of contract between a subcontractor and the owner. A party whose labor or material is used in the erection of a building, without the consent of either the general contractor or the owner, is given a right by the mechanics' lien statutes in the sums to become due under the building contract, but in order to perfect that right it is essential that such party substantially comply with all the requirements of the statutes. Judge Kelly, in *Maddux* v. *Buchanan,* 121 Va. 102, 92 S. E. 830, 831, said:

"Laborers and materialmen are favored by the statute, but not to the extent of requiring the owner of property to pay the same bill twice, once to the builder with whom he has contracted, and again to parties with whom he has no contractual relations. Our present mechanic's lien laws deal fairly with both the owner and the subcontractor, requiring the owner, after notice, to withhold from the general contractor enough to pay the subcontractor," provided the owner is indebted to the general contractor at the time notice is given, or may thereafter become indebted to him by virtue of the contract.

" * * * The statute was designed to protect subcontractors, and creates a liability which would not otherwise exist; but the terms must be met before its benefits can be enjoyed. In other words, as this court has said in former decisions, 'the owner is under no obligation to protect the interest of the subcontractor, except where the latter has complied with the law, and thus placed himself in a position to demand protection from the owner.' (*Schrieber* v. *Bank,* 99 Va. 257, 262, 38 S. E. 134, 135; *University of*

*Va.* v. *Snyder,* 100 Va. 567, 581, 42 S. E. 337; *Steigleder* v. *Allen,* 113 Va. 686, 691, 75 S. E. 191.)"

Judge Whittle, in the case of *Francis* v. *Hotel Rueger,* 125 Va. 106, 99 S. E. 690, 694, has this to say:

"An examination of outside authorities shows that there exists a hopeless diversity of opinion as to whether mechanics' lien statutes should receive a liberal or strict construction. We believe the correct rule deducible from the language and purposes of our statute and the decisions of this court with respect to it is, that there must be a substantial compliance with the requirement of that portion of the statute which relates to the creation of the lien; but that the provisions with respect to its enforcement should be liberally construed."

Laborers and materialmen who are unwilling to extend credit to a general contractor have three courses, or methods, open to them to obtain additional security for their claims out of the funds due, or to become due, under the building contract: (1) By taking the steps prescribed by section 6429a of the Code of 1930 to fasten personal responsibility upon the owner; (2) by filing separate and independent liens under Code, sections 6428; (3) by taking advantage of a lien perfected by the general contractor. Whichever method is followed, written notice to the owner of the amount and character of the claim is a prerequisite to the perfection of the lien or to fasten personal responsibility upon the owner.

It is a matter of common knowledge that the owner of a building under construction is frequently on the lot and sees the mechanics and laborers at work, examines the materials furnished, knows from what source they are obtained, and usually is informed as to the local wage scale and the market price of materials. If knowledge without formal written notice of the amount of the claims due subcontractors is sufficient to bind the owner personally or establish a lien on his property, then he would be virtually a guarantor of all bills incurred for the structure by the

general contractor. This would unjustly, if not uncon-stitutionally, abridge the right of contract. *Maddux* v. *Buchanan, supra.* All the statutory provisions for mechan-ics' liens are indispensable, and the omission of any one of them is fatal. Burks' Pleading and Practice (2d ed.), p. 830; *Trustees Franklin Street Church* v. *Davis,* 85 Va. 193, 7 S. E. 245; *Shackleford* v. *Beck,* 80 Va. 573; *Davis* v. *Alvord,* 94 U. S. 545, 24 L. Ed. 283; *S. V. R. R. Co.* v. *Miller,* 80 Va. 821; *Francis* v. *Hotel Rueger, supra; Clement* v. *Adams,* 113 Va. 547, 75 S. E. 294; *Gilman* v. *Ryan,* 95 Va. 494, 28 S. E. 875; *Maddux* v. *Buchanan, supra; Diebold & Sons' Stone Co.* v. *Tatterson,* 115 Va. 766, 80 S. E. 585; *Furst-Kerber Co.* v. *Wells,* 116 Va. 95, 81 S. E. 22; 18 R. C. L., sections 57 and 58, pp. 926, 927.

If a subcontractor desires to obtain a lien or to bind the owner personally, he is required by the express terms of the statute to give written notice of the amount and character of his claim. Knowledge acquired by the owner through other means than a written notice from the sub-contractors cannot be substituted for the statutory require-ment, in the absence of affirmative evidence showing that the giving of written notice was waived. Failure to per-form this essential requirement of the statute is fatal to the establishment of the lien.

Appellants further contend that even if writ-ten notice to the owner is mandatory, the statute does not prescribe the time in which notice shall be given, and hence it may be given at any time; that in this case the payment of $7,680 to Jefferson Electric Company was void, and the result is that the appellees hold this sum as trustees for the subcontractor, and that appellants are entitled to have their claims paid therefrom.

One answer to this contention is that appellants have never undertaken to give appellees any written notice of the amounts and character of their claims. When the statutes are read together, as they must be, it is apparent that all steps required must be taken within the specified

time in order to make a valid lien upon the property of a person with whom the subcontractor has no privity of contract. The filing of the memorandum in the clerk's office, if prematurely made—that is before the work is done and the material furnished—is not authorized by the statute. The statute gives a sixty-day period from the time the work is done and the material furnished in which to perfect the lien. Steps taken before that time are premature, steps taken after that time are too late. Burks' Pleading and Practice (2d ed.), p. 829; *Moore* v. *Rolin,* 89 Va. 107, 15 S. E. 520, 16 L. R. A. 625; *Furst-Kerber* v. *Wells,* 116 Va. 95, 81 S. E. 22.

After the lien is perfected, if suit is not instituted within six months from the time the whole amount of the claim becomes payable, all benefits conferred are lost. Clearly, it was not the legislative intent to give subcontractors an indefinite time in which to perfect their liens.

It is not denied that the sum paid Jefferson Electric Company was a valid debt and justly due by the general contractor to this corporation, and that the assignment thereof by the general contractor was based on a valid consideration as between the parties, but the appellants contend that by the provisions of Code, section 6435, it is void as to the *claims* of subcontractors. This same contention was made in the case of *Fairbanks* v. *Cape Charles,* 144 Va. 56, 131 S. E. 437, where it was held that the section applied only to subcontractors who had perfected their liens on the structures erected. In the above case, Judge Burks pointed out the distinction between the present statute and the former law and expressly held that such assignments were not void as to subcontractors who had no potential right to perfect liens. The appellants, through no act of the appellees, have permitted the time given by the statute to expire without taking the necessary steps to perfect their liens, and now have no potential right to a lien.

The case of *DeWitt* v. *Coffey,* 150 Va. 365, 143 S. E. 710, involved the question of priority of an assignment be-

tween a general contractor and a subcontractor who had perfected his lien. It was held that section 6435 preserved the priority of the inchoate, but potential, lien created by the chapter, and that the owner could not defeat the right of a subcontractor by executing bonds secured by a deed of trust on the property to an assignee of the general contractor. This decision has no bearing upon the case under consideration, for the reason that appellants never acquired a valid lien.

The appellants also contend that the owners voluntarily appealed to a court of equity and that under the maxim "He who seeks equity must do equity," they should be required to pay these claims. A complete answer to this contention is found in the following quotation from *Feuchtenberger* v. *Williamson,* 137 Va. 578, 120 S. E. 257, 259:

"The very existence of the lien on the land, as well as the jurisdiction of the court to enforce it, is here involved. Both the lien and the jurisdiction of the court depend upon the statute and not upon equitable or ethical rules. So that neither the conscience of the chancellor nor the length of his foot can supplement the statute, and vest the court with any jurisdiction except that which is based upon the statute fairly construed."

The appellants further contend that the written notice required by the section was waived by the owners, and in proof of this assertion refer to the following stipulation:

"The complainants, W. J. Pearman, R. A. Covington and L. C. Priddy, by their counsel, Geo. Chaney, herein stipulate and agree that the memoranda for mechanics' liens and notices set out in complainants' bill in this suit and in the bill and petitions filed in the Circuit Court for the City of Roanoke, in the cause of *Roanoke Iron & Bridge Works* v. *W. J. Pearman, et als.,* were duly filed and notices served within the statutory period of thirty days; that suit to enforce said liens was instituted within the statutory period of six months; that the amounts set out in the said bills and

petitions are correct; that complainants waive any technicalities as to the aforesaid."

It will be noticed that the above stipulation expressly states, "the memoranda for mechanics' liens and *notices set out in the complainants' bill* in this suit \* \* \* were duly filed and notices served within the statutory period of thirty days; \* \* \* that complainants waive any technicalities."

Referring to the bill, it is found that it alleges that only two of the alleged lienors—*i. e.,* J. G. Wilson Corporation and Roanoke Iron and Bridge Works, Inc.—served notices upon the owners claiming a subcontractor's lien. Upon a literal interpretation of the stipulation, read with the bill, it would appear that the owners did not waive the right to contest the validity of the liens claimed by the appellants, but if there is any doubt on this score, the decree entered on October 13, 1930, constitutes a complete bar to the appellants making any such contention in this court. That decree is as follows:

"This cause came on this day to be heard upon the pleadings and argument of counsel, and some question having arisen as to what was to be included in the stipulations filed, the court doth adjudge, order and decree that Adams, Payne & Gleaves, Inc., Jos. W. Hodges & Sons, Stone Tile and Supply Co., Inc., and H. L. Coleman be, and they are hereby given until October 29, 1930, to take and file any further proof which they may deem advisable, at which time if the parties to this cause desire, the matter will be further argued."

It thus affirmatively appears that the parties did not agree on the interpretation to be placed upon the stipulation in the trial court, and for that reason final determination of the matter was delayed in order to give the appellants an opportunity to take such proof as they desired, and no proof was introduced tending to show notices were given, or that the appellees had waived notice.

We are of opinion that the decree of the trial court is plainly right and it is affirmed.

*Affirmed.*