## Richmond

### James E. Mills, Et Al. v. Moore's Super Stores, Etc., Et Al.

September 2, 1976.

Record No. 750967.

Present, All the Justices.

*B. K. Cruey* (*Cruey & Mason*, on brief), for appellants.

*Bolling Lambeth; John Lee Hopkins*, for appellees.

COCHRAN, J., delivered the opinion of the court.

In this appeal the only question is whether the appellees, subcontractors furnishing materials for the construction of a residence on certain real estate of the appellants, perfected their statutory liens against the property.

On April 15, 1974, the appellants, James E. Mills and Iris W. Mills, his wife (owners), entered into a contract with Charles W. Hollon under which Hollon agreed to construct a residence for the owners for the sum of $30,000. The contract was executed in order that the owners might obtain a commitment for bank financing. On April 26, 1974, the owners and Hollon executed a second contract for the construction of the same residence on the basis of construction cost plus 15% commission. When the residence was approximately two-thirds completed difficulties arose between the owners and Hollon, and all work performed by Hollon, or his corporation, Hollon and Shelnut Corporation, ceased on September 18, 1974. Thereafter, mechanics' lien memoranda were filed by Moore's Super Store (Moore's), Walter Vincient Toms (Toms), Carey S. Fowler and John L. Bell, T/A Moneta Building Supply Company (Moneta), and others, claiming, as subcontractors, liens for materials furnished for the Mills project.

On November 27, 1974, Moore's filed its bill of complaint in the court below against the owners, to enforce various mechanics' liens. Subsequently, Hollon and Shelnut Corporation and Hollon were made parties defendant, and Toms and Moneta, with leave of court, filed intervening petitions for the enforcement of their liens. The matter was referred to a commissioner in chancery, who heard the evidence and reported his findings to the trial court.

The commissioner reported that the contract between the owners and Hollon, dated April 26, 1974, was assigned by Hollon to Hollon and Shelnut Corporation, but that the owners did not consent to the assignment or have any knowledge of it. The commissioner reported that Moore's filed memoranda of mechanics' liens against Hollon and Shelnut Corporation and the owners on September 25, 1974, and November 21, 1974, for the same account of $7,572.54; that Toms filed a memorandum against Hollon and Shelnut Corporation and the owners for $557.87 on October 8, 1974, and a memorandum against Charles W. Hollon and the owners on November 21, 1974, for the same account of $557.87; and that Moneta filed a memorandum against Hollon and Shelnut Corporation, Charles W. Hollon, and the owners, on November 21, 1974, for $1,652.85. The commissioner reported that these

liens were timely filed, and allowed all of them as first liens against Charles W. Hollon, general contractor, and the owners, except that he reduced Moore's lien by $2,600.08, the cost of materials which the evidence showed had not been furnished for the owners' construction job, to the sum of $4,972.46. The land affected by the liens was a tract of 1.43 acres.

The commissioner found, from the testimony of Willie Robert Shelnut, a witness for the owners, who had been associated with Hollon in the construction business, that the total cost of labor and materials furnished on the Mills job before work was discontinued was $21,926.08, on which 15% commissions aggregated $3,288.91, making a total amount payable of $25,214.99. The general contractor had received $20,000 in two payments on account from the bank which had agreed to furnish construction money for the owners, so that only $5,214.99 was available to pay the liens of Moore's, Toms, and Moneta in the total amount of $7,138.18. The commissioner reported, therefore, that each of these three lien creditors was entitled to the same pro rata share (72.6%) of its asserted claim, or $3,610 for Moore's, $405.02 for Toms, and $1,199.97 for Moneta. By decree entered May 9, 1975, the chancellor overruled all exceptions to the commissioner's reports, ratified and confirmed the same, and decreed that the appellees were entitled to liens against the 1.43 acres in the amounts stated in the reports. The owners have appealed from this decree.

■ The owners first argue that the appellees failed to perfect their liens in compliance with the provisions of Code § 43-7.[1] This statute requires that a subcontractor follow the procedure provided for general contractors in Code § 43-4,[2] and in addition give written notice to the

---

[1] Code § 43-7 (Repl. Vol. 1970) provides:

"Perfection of lien by subcontractor; extent of lien.—Any subcontractor, in order to perfect the lien given him by § 43-3 shall comply with § 43-4, and in addition give notice in writing to the owner of the property or his agent of the amount and character of his claim. But the amount for which a subcontractor may perfect a lien under this section shall not exceed the amount in which the owner is indebted to the general contractor at the time the notice is given, or shall thereafter become indebted to the general contractor upon his contract with the general contractor for such structure or building or railroad."

[2] Code § 43-4 (Repl. Vol. 1970) provides in pertinent part:

"Perfection of lien by general contractor; recordation and notice.—A general contractor, in order to perfect the lien given by § 43-3, shall file at any time after the work is done and the material furnished by him and before the expiration of sixty days from the time such building, structure, or railroad is completed, or the work thereon otherwise terminated, in the clerk's office . . . a memorandum showing the names of the owner of the property sought to be charged, and of the claimant

owner in order to perfect his lien which, of course, is limited to the amount in which the owner is indebted to the general contractor, at or after the time of notice.

The evidence establishes that work on the Mills residence under the contract terminated on September 18, 1974. James E. Mills, Hollon, and Shelnut all testified to this fact. Although the appellees conceded in oral argument that work "stopped" on that date, they insisted, nevertheless, that there was no evidence that the work at that time was "otherwise terminated" within the meaning of Code § 43-4. We do not agree.

It is uncontroverted that no employees of Hollon, of Hollon and Shelnut Corporation, or of any subcontractor, worked on the project after September 18. The commissioner found, from the testimony of Mills, that Hollon himself terminated the construction. The owners' counsel stated in oral argument that Mills "fired" Hollon, a contention which, though denied by Mills in his testimony, was supported by the testimony of both Hollon and Shelnut. Regardless of who prompted the termination, however, the evidence shows that work under the contract ceased on September 18, when Hollon and Shelnut Corporation was experiencing severe financial problems and construction of the Mills residence was approximately two-thirds completed. We hold, therefore, on the record before us, that the work was "otherwise terminated' on that date, within the meaning of Code § 43-4. *See Loan Association* v. *Kendall Company*, 205 Va. 136, 147-48, 135 S.E.2d 178, 186-87 (1964), where we affirmed the chancellor's decree, which confirmed the commissioner's finding that work had been "otherwise terminated" prior to completion of construction.

The memorandum of lien filed by Moneta on November 21, 1974, was not filed within sixty days after the work was "otherwise terminated", as required by Code § 43-4. Therefore, the chancellor erred in allowing this lien.

We reject the owners' contention, however, that the Moore's and Toms liens were not perfected in compliance with the statute. While the written notices of these liens were not served on the owners within sixty days after September 18, 1974, the memoranda of liens were timely filed.

There is no requirement in Code § 43-7 that written notice to the

of the lien, the amount and consideration of his claim, and the time or times when the same is or will be due and payable, verified by the oath of the claimant, or his agent, including a statement declaring his intention to claim the benefit of the lien, and giving a brief description of the property on which he claims a lien. . . ."

owner shall be given within any specified time. The language of this statute has remained without substantive change since its codification as Section 2477, Code of 1887, and no time limit has ever been prescribed for giving notice. The notice affords protection to the owner, who is not in privity of contract with the subcontractor, so that he may not be required to pay twice for the same work and materials. Since the statute speaks only of amounts payable by the owner to the general contractor at and after the time the subcontractor's notice has been given, the risk of losing his lien is properly imposed upon the dilatory subcontractor.

Only when the owner receives the notice to which he is entitled does he incur a legal obligation to the subcontractor. In the present case, the record shows that the sum of $5,214.99, which the commissioner found to be available to pay subcontractors' liens, remained undistributed by the owners after the written notices were served on them by Moore's and Toms.

*Coleman* v. *Pearman*, 159 Va. 72, 165 S.E. 371 (1932), relied on by the owners, is not controlling. In that case, the subcontractors never gave the written notices to the owners which we held were mandated by the statute. Our opinion stated, in dictum, that all statutory steps must be taken within the specified time in order to perfect a subcontractor's lien. This fundamental rule of statutory construction applies where a time is specified, *e.g.*, filing the memorandum within sixty days, but we are unwilling to extend it to an act for which no time limit for performance is specifically prescribed in the statute. To the extent, therefore, that *Coleman* indicates that the subcontractor's notice to the owner must be given within sixty days after construction is completed or the work otherwise terminated, it is hereby expressly disapproved.

The first notices to the owners in the present case were served by Moore's and Toms more than sixty days after the work was terminated, but before the chancery suit was instituted to enforce the liens. Additional notices were served after the suit was commenced, but before there was any change of position by the owners. We hold that there was sufficient compliance by these subcontractors with the notice requirements of Code § 43-7.

[3] Code § 43-23.1 (Repl. Vol. 1970) provides:

"§ 43-23.1. *Forfeiture of lien.*—Any person who shall knowingly include in his memorandum of lien work not performed upon or materials not furnished for the property described in his memorandum shall thereby forfeit any right to a lien under this chapter."

■ We find no merit in the owners' contention that the forfeiture provisions of Code § 43-23.1[3] should be invoked to invalidate Moore's lien. Although the commissioner found that materials valued at $2,600.08 included in Moore's memorandum of lien had not been furnished for the Mills residence, there is insufficient evidence in the record for us to hold as a matter of law that Moore's knowingly included these items. Jack Bradley, Moore's manager, testified that he had heard rumors that some of the materials billed to the Mills job were not used there, but he assumed that his employees delivered the materials to the site of the job specified on the sales ticket, and he had no reason to believe otherwise. He acknowledged that frequently a contractor will move materials from one job to another and that Moore's does not question how the contractor utilizes the materials. The commissioner reasonably could have concluded that this evidence fell short of establishing that Moore's acted knowingly in claiming items that were not allowable. He excluded all such items but did not otherwise impose a forfeiture, and we find no error in the chancellor's approval of the commissioner's reports in this respect.

■ The last argument of the owners, with which we are concerned, is that these liens were not perfected because the general contractor with whom the owners dealt was Hollon individually, whereas the general contractor with which Moore's and Toms contracted was Hollon and Shelnut Corporation. The commissioner could properly find, as he did find, from the testimony of Hollon and of Shelnut, that the Mills contract was assigned by Hollon individually to Hollon and Shelnut Corporation. Hollon, serving as president of the corporation, and Shelnut, the vice-president, were the sole stockholders. Although there was no evidence that the assignment was made in writing or that it was accepted by formal corporate action, it is clear from their testimony that both Hollon and Shelnut understood and agreed that when the corporation commenced to do business about June 1, 1974, it took over and assumed the Mills contract, as well as other construction contracts on which Hollon and Shelnut had been working.

The owners' reliance on *Atlantic States Const.* v. *McCann Steel*, 210 Va. 473, 171 S.E.2d 689 (1970), is misplaced. There, a general contractor agreed to construct a building, but the contract was cancelled, and the landowners entered into a new contract with a second general contractor. The first contractor, as an inducement to the second contractor to sign the contract, agreed to deposit an indemnity of $30,000. After the signing of the second contract the original con-

tractor failed to deliver the indemnity, but endeavored to furnish the necessary steel for the job by ordering it from a supplier, who subsequently undertook to enforce a mechanic's lien against the property. We held that the evidence established that there was no assignment of the first general contract, so that Code § 43-19[4] did not apply. We expressly refrained from deciding whether if there had been an assignment of the contract to the second contractor, the supplier, who dealt only with the first contractor, would have been entitled to a mechanic's lien under Code § 43-19 for materials furnished under a contract made after the assignment. Here, there was an assignment to the second contractor, and the suppliers dealt only with that assignee. We hold that, under the facts of this case, the subcontractors, who, so far as the evidence shows, contracted with the assignee in good faith, are not to be denied the protection of the mechanics' liens statutes merely because the owners did not know of the assignment.

The owners are not prejudiced if the liens are upheld. The liens, within the statutory limitations, were allowed only for materials which were furnished for the Mills residence pursuant to the general contract which Hollon represented to the materialmen to be a contract of his corporation. In *Atlantic States Const., supra,* the second contractor denied that it owed anything to the supplier. In the present case, neither Hollon nor his assignee, the corporation, has ever denied that moneys payable to Hollon under the contract would be payable to materialmen who furnished materials for the job for the assignee. Under these circumstances, we hold that Moore's and Toms, suppliers of the assignee, are entitled to mechanics' liens against the property, even though in their memoranda of liens they designated the assignee corporation, rather than Hollon, as general contractor. The written notices subsequently given to the owners described Hollon as the general contractor, and the dates these notices were given were the critical dates in fixing liability upon the owners for any sums then

---

[4] Code § 43-19 (Repl. Vol. 1970) provides:

"**§ 43-19. Validity and priority of lien not affected by assignments.**—Every assignment or transfer by a general contractor, in whole or in part, of his contract with the owner or of any money or consideration coming to him under such contract, or by a subcontractor of his contract with the general contractor, in whole or in part, or of any money or consideration coming to him under his contract with the general contractor, and every writ of fieri facias, attachment or other process against the general contractor or subcontractor to subject or encumber his interest arising under such contract, shall be subject to the liens given by this chapter to laborers, mechanics, and materialmen. No such assignment or transfer shall in any way affect the validity or the priority of satisfaction of liens given by this chapter."

or thereafter payable to the general contractor. The commissioner and the chancellor did not err in allowing the Moore's and Toms liens.

For the reasons stated, we will enter a final decree affirming the decree of the trial court insofar as it allowed the liens of Moore's and Toms and reversing the decree insofar as it allowed the lien of Moneta.

*Affirmed in part; reversed in part; and final decree.*