**In re COUNTY GREEN LIMITED PARTNERSHIP, Debtor.**

**CONCRETE READY–MIX OF LYNCH-BURG, INC., et al., Appellants,**

v.

**COUNTY GREEN LIMITED PARTNER-SHIP et al., Appellees.**

**Civ. A. No. 77–0014(C).**

United States District Court,
W. D. Virginia,
Charlottesville Division.

Aug. 16, 1977.

Robert M. Musselman, Douglas E. Little, Charlottesville, Va., for County Green Limited Partnership.

William J. Strickland, Charlottesville, Va., for First & Merchants Nat'l. Bank.

John E. McDonald, Jr., Richmond, Va., for Lawyers Title Insurance Corp.

Ross W. Krumm, Charlottesville, Va., for Tech-Mod Corp. & Dr. Samuel Messina.

Jack V. Place, Charles F. Barnett, Jr., Roanoke, Va., for Concrete Ready-Mix of Lynchburg.

## MEMORANDUM OPINION AND ORDER

TURK, Chief Judge.

This case is before the District Court on the appeal of Concrete Ready-Mix of Lynchburg, Inc., a claimed mechanic's lienor, and twenty other such claimants, from a judgment of the Bankruptcy Court holding invalid their liens on certain property owned by the bankrupt debtor, County Green Limited Partnership. The appellants supplied labor and materials in the construction of an apartment complex being built by the Limited Partnership and financed in part through a secured construction loan by the First and Merchants National Bank. All findings of fact by the Bankruptcy Court are to be accepted unless clearly erroneous. Rule of Bankruptcy Procedure 810.

The Partnership has twenty-five limited partners and two general partners. The two general partners are Dr. Samuel L. Messina and the Tech-Mod Corporation, a Delaware Corporation wholly owned by Dr. Messina. Initially, the property being developed was owned by Tech-Mod. Tech-Mod entered into a contract with Lansingwood Arms, Ltd., whereby Lansingwood Arms, Ltd. would serve as general contractor and construct the apartment complex for $2,141,700.00. Later, Tech-Mod assigned the real estate upon which the apartment complex was being built and its construction contract with Lansingwood Arms, Ltd. to the debtor, County Green Limited Partnership. Because of numerous defaults by Lansingwood Arms it was released from its contract. The Partnership then entered into a contract with the County Green Development Corporation, a Corporation formed for the purpose of acting as general contractor to complete the County Green Apartment Complex. Dr. Messina was the Development Corporation's President, chief executive officer, and sole shareholder, although he subsequently transferred several shares to the Tech-Mod Corporation. The initial capitalization of the Corporation consisted of the proceeds of the sale of ten shares of $10 par value stock for a total paid-in capital of $100.00. The price of the

contract between the Development Corporation and the Limited Partnership was $2,051,725.13, but was reduced by the sums either paid or payable under the former Lansingwood Arms' contract for an amended contract price of $1,808,251.13.

The Partnership ran into financial difficulty and after numerous defaults in its construction loan agreement, First and Merchants began foreclosure proceedings under its deed of trust and security agreement. The debtor, County Green Limited Partnership, then commenced proceedings under Chapter XII of the Bankruptcy Act. In an adversary proceeding in the Bankruptcy Court the Bankruptcy Judge found liens which had been filed by the appellant mechanic's lienors to be invalid, and they appealed to the District Court. The issues tried by stipulation in the Bankruptcy Court and the issues now before this Court are:

1. Was there a "contractor" within the meaning of Title 43 of the Code of Virginia, or was County Green Development Corporation a mere corporate fiction and the alter ego of the owner, County Green Limited Partnership?

2. Was there a valid contract between County Green Development Corporation and County Green Limited Partnership?

3. If the answer to No. 2 above is in the affirmative, were the terms of the contract complied with?

4. Whether the owner of County Green Limited Partnership was indebted to the general contractor, County Green Development Corporation, at the time the various subcontractors gave notice to the owner of their respective mechanic's liens' claims.

5. What is the dollar amount of the deficiencies and omissions under the contract between County Green Limited Partnership as owner and County Green Development Corporation as general contractor dated August 1, 1974, as amended by addendum dated August 3, 1976?

The first question stipulated for consideration by the Bankruptcy Court was whether there was "a 'contractor' within the meaning of Title 43 of the Code of Virginia, or was County Green Development Corporation a mere corporate fiction and the *alter ego* of the owner County Green Limited Partnership." *Va.Code Ann.*, § 43–3 (1976) provides in part that all persons performing labor or furnishing material of the value of $50.00 or more for the construction of any building are entitled to a lien if it is perfected in accordance with the Code. A general contractor may perfect a lien for work done and materials furnished by filing in the Clerk's Office of the county or city in which the property constructed is located, a memorandum showing the name of the owner of the property sought to be charged, the name of the claimant, the amount of the claim, when the amount is due and payable, and a brief description of the property upon which he intends to claim the lien; the memorandum must be verified, and it must be filed before 90 days from the time the work is completed or the construction terminates. *Va.Code Ann.*, § 43–4 (1976). A subcontractor may perfect a lien by taking all the steps required for perfection by a general contractor, and, in addition, he must give notice in writing to the owner of the property or his agent of the amount and character of his claim, but the amount of his claim cannot exceed the amount in which the owner is indebted to the general contractor at the time the notice is given. *Va.Code Ann.*, § 43–7 (1976). The limitations of § 43–7 are for the protection of the owner from double liability. "The notice affords protection to the owner who is not in privity of contract with the subcontractor, so that he may not be required to pay twice for the same work and materials." *Mills v. Moore's Super Stores*, 217 Va. 276, 280, 227 S.E.2d 719, 722 (1976). The terms "general contractor" and "subcontractor" are defined by *Va.Code Ann.*, § 43–1 (Supp. 1977):

As used in this chapter the term "*general contractor*" shall include contractors, laborers, mechanics, and persons furnishing

materials, who contract directly with the owner and the term *"subcontractor"* shall include all such contractors, laborers, mechanics, and persons furnishing materials, who do not contract with the owner but with the general contractor.

. . .

■ The Bankruptcy Court determined that the County Green Development Corporation was not the *alter ego* of the debtor, County Green Limited Partnership, and that the Corporation was a general contractor within the contemplation of § 43–1 and that no amount was owed on the general contract. Of course, the net result of this finding is the preclusion of the mechanic's lienors from asserting their liens on the property they improved at the behest of Dr. Samuel Messina, general partner of the owner, sole stockholder of the other general partner of the owner, and major stockholder of the Development Corporation which had but one other stockholder, the other general partner. In reaching its conclusion the Bankruptcy Court, in essence, reasoned that the Corporation was duly incorporated, entered into a formal construction contract with the Partnership, dealt with other persons as contractor, and in its transactions was recognized as contractor. This Court has determined that the Bankruptcy Court's findings that County Green Development Corporation was not the *alter ego* of the debtor and that the claimed mechanic's lienors did not furnish labor and materials to the owner, are clearly erroneous.

■ A Virginia corporation begins its corporate existence upon the issuance of a certificate of incorporation by the State Corporation Commission. *Va.Code Ann.,* § 13.1–52 (1973). Once it has a legal existence of its own it will be recognized as a separate entity, functioning through its officer and directors, to which its creditors and other third parties must look for satisfaction of debts or performance of obligations incurred or contracted for in the corporate name. The very purpose of the corporate structure is the advancement of limited liability of investors with an underlying legislative policy directed to the encouragement of investments. Consequently, the corporate structure should never lightly be disregarded. It is not, however, a shield for powerful corporate shareholders to hide behind so as to countenance domination and control which operates to defraud and wrong creditors:

> It is well settled that courts will not be blinded by corporate forms nor permit them to be used to defeat public convenience, justify wrong, or perpetuate fraud, but will look through the forms and behind the corporate entities involved to deal with the situation as justice may require.

*Stone v. Eacho,* 127 F.2d 284, 288 (4th Cir. 1942). Consequently, the corporate entity will be disregarded when it is so organized and its affairs so conducted as to make it a mere instrumentality or adjunct of another corporation, person, or business enterprise and there has been a fraud on creditors. Moreover, "[t]his rule is applicable wherever reason and justice require it although the acts of the parties amount to constructive fraud only, the rule not being limited to cases where they have been guilty of actual fraud and criminal intent." *Lewis Trucking Corporation v. Commonwealth,* 207 Va. 23, 32, 147 S.E.2d 747, 753 (1966). *See DeWitt Truck Brokers v. W. Ray Flemming Fruit Company,* 540 F.2d 681, 684–685 (4th Cir. 1976). However, no general rule can be posited as to when a corporate entity will be pierced. Nevertheless, as a beginning point courts have quite often looked to the corporate capitalization to determine whether it was reasonably adequate for the venture that was undertaken. *See DeWitt Truck Brokers v. W. Ray Flemming Fruit Company, supra; Lukenbach S. S. Company v. W. R. Grayson Co.,* 267 F. 676 (4th Cir. 1920). In *Truck Brokers, supra,* the Court listed the factors, in addition to under-capitalization, most often considered in disregarding the corporate entity:

> Other factors that are emphasized in the application of the doctrine are failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning

of funds of the corporation by the dominate stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominate stockholder or stockholders.

*Id.* at 686–687.

After examining the manner in which the affairs of the County Green Development Corporation were conducted, it is apparent that, in fact, it had no separate existence of its own. It was in all respects a mere fiction and the *alter ego* of the County Green Limited Partnership. It follows, therefore, that the appellant dealt not with the general contractor within the contemplation of § 43–1 but with the owner.

■ First, the policies of the Corporation were not directed to its own interests but to those of the Limited Partnership and its general partners. The evidence indicates that after the conclusion of a binding agreement between the Corporation and the Partnership, the Corporation agreed to reduce the consideration it was to receive by $243,474.00. It further shows that the Development Corporation paid a total of $680,857.00 to the Tech-Mod Corporation for services the nature of which is not wholly clear. (Tr. 60). Furthermore, the Eagle Construction Corporation, a corporation owned by Tech-Mod, was bondable and because of that fact was paid a total of $50,-000.00 by the County Green Development Corporation to serve as nominal party contractor, although, in fact, it had no men or equipment on the job and County Green Development paid the bond premium. Moreover, in contravention of the corporate interest Dr. Messina failed to have the Corporation acquire a contractor's license pursuant to *Va.Code Ann.*, § 54–128 (1974). Such a license is required whenever any person, firm, association, or corporation contracts for the construction of any building or on any property owned, controlled, or leased by another person when the total value of the construction undertaken is $30,000.00 or more. *See Va.Code Ann.*, § 54–113(2) (Supp.1977). Failure to obtain a license when required results in the contractor being unable to recover, by legal action, either the contract price or on the basis of quantum meruit. *See Bacigalupo v. Fleming*, 199 Va. 827, 102 S.E.2d 321 (1958); *Surf Realty Corporation v. Standing*, 195 Va. 431, 78 S.E.2d 901 (1953). The failure of Dr. Messina to license his Corporation can mean one of two things. Either Dr. Messina acted to further the position of the Partnership to the detriment of the Corporation, or he acted on the belief that the apartment complex was not the property of *another person* within the purview of the statute.

■ The second factor considered by this Court in its determination not to recognize the Corporation pertains to the Corporation's under-capitalization. The enterprise was not only established on an inadequate financial basis, its earnings under the contract were drained off by shareholders so as to increase its financial dependency. The corporate venture was launched with only $100.00 in stated capital. The evidence demonstrates that aside from this $100.00 the Corporation's only other asset was its construction contract with the Partnership and this was depleted through a subsequent agreement whereby the Corporation agreed to accept less money for its work. This fact coupled with the large payments by the Corporation to the general partners of the Limited Partnership for services of questionable value, which were not directly related to the necessary cost of construction, are clear indications that the Corporation was nothing more than a conduit of funds for the general partners. Thin capitalization is normally an independent basis for piercing the corporate veil in order to hold corporate shareholders liable or to subject their property to the debts of creditors. However, thin capitalization may also evince something else. In the present case it is further evidence of the shareholders' total disregard for the Corporation's prospects for success and vitality as a corporate entity separate and apart from the Limited Partnership. It is manifest that Dr. Messina, in fact, considered the construction as a

venture undertaken by the Limited Partnership with the Corporation serving as its agent. This fact is no more clearly illustrated than by testimony of Dr. Messina that the egregious under-capitalization of the Corporation never caused him concern because of the wealth of the Limited Partnership. (*See* Tr. Vol. I 187).

Third, the Corporation failed to keep reliable records concerning its financial transactions with creditors, with shareholders, and with the Limited Partnership, and personal transactions were not differentiated from corporate business. The evidence indicates the inextricable intermingling of personal, corporate, and partnership finances. This pervasive comingling is persuasive evidence that the Corporation and the Partnership constitute a single economic enterprise.

Fourth, corporate formalities were not followed. The very nature of a closely held corporation militates against strict compliance with corporate formalities. However, the centralization of ownership is not a carte blanche to abrogate established procedure. To state that corporate formalities were ignored is a gross understatement. This fact is no more graphically illustrated than by the fact that at least one person listed as a corporate director was unaware of his directorship.

The last and foremost factor this Court considered in determining to pierce the corporate veil is the duty of a controlling shareholder to the corporation and to its creditors. A director or a dominating and controlling shareholder has fiduciary duty to creditors in dealing with the corporation and with them. *See Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). This duty demands good faith and fair dealings. Apparently, Dr. Messina recognized no such duty. Although arm's length dealing is ill-defined or nonexistent in a closely held corporate setting, the requirement of fair dealing and good faith remains. This means that each transaction entered into by the corporation through its officers and directors must be entered into in good faith. In most all instances, good faith requires an intent to benefit the corporation. It is apparent that corporate benefit was never contemplated as the Corporation was merely the adjunct of the general partners. Such dealings with the Corporation operated in effect as a fraud on creditors.

It is an incongruous result indeed which takes the limiting language of § 43–7 which was meant to protect an owner from double liability and converts it into a mechanism for the evasion of debts. It is clear from the evidence that the County Green Development Corporation was a mere adjunct of the Limited Partnership, a mere tool of expediency used by the general partners of the Limited Partnership to carry out personal and partnership business. Therefore, this Court is constrained to deal with the situation as it in fact existed, and hold that the mechanic's lienors who dealt with the Corporation dealt with the owner within the contemplation of § 43–1. Consequently, the validity of their liens is to be determined according to the provisions of 43–4 and not 43–7.

This Court's determination that appellants' liens are to be determined in accordance with the provisions of 43–4 and not 43–7 renders moot the remaining stipulated questions which are before the District Court. However, the extent of appellants' liens has not been determined. Therefore, the case is reversed and it is remanded for a determination of the extent of the mechanic's lienors' liens under *Va.Code Ann.*, § 43–4.

REVERSED AND REMANDED.