## CIRCUIT COURT OF THE CITY OF WINCHESTER

Raub Supply Co.

v.

Foglesong

### December 23, 1981

### Case No. (Law) 81-L-43

### By JUDGE HENRY H. WHITING

In this case a creditor seeks to subject the principal stockholder of a small corporation to personal liability on what appears to be a corporate debt.

The Court had suggested that the creditor might get some comfort from the doctrine of "thin corporations." However, a review of the cases reveals that while this corporation had a small capitalization it was not so obviously inadequate, measured by the nature and magnitude of the corporate undertaking, as to indicate an effort to defraud and mislead the creditors, the *sine qua non* necessary to pierce the corporate veil in this instance.

In the consideration of this matter, several general principles should be kept in mind. Courts will and should pierce the corporate veil whenever it is being used as an instrument of injustice or as a fraud or sham to defraud creditors, but this power is to be exercised reluctantly and cautiously. 1 *Fletcher on Corporations*, § 41.3, 1981 pocket part, page 3. Those circumstances requiring this action, "necessarily vary according to the facts of the particular case. Therefore, each case in which the issue is raised should be regarded as *sui generis*, to be decided in accordance with its own underlying facts," *Ibid.*

Many of the cases considering the problem have articulated a series of tests in making such a determination, sect. 41, *Fletcher on Corporations*, § 41.3, page 191, and page 43 of the pocket part. Taking those considerations in order, as well as the consideration mentioned by Judge Turk in the case of *In Re Cty. Green Ltd. Partnership*, 438 F. Supp. 701 (W.D. Va. 1977), we look at the facts in this case.

(1) *Failure to observe the corporation formalities.*

While this small, family-held corporation operated by Mr. Foglesong in which his wife acted as secretary and his father-in-law apparently did some work, never held formal meetings but did discuss its business from time to time over the dinner table, at which time all of the directors, Messrs. Bly and Foglesong and their respective wives were present. An organizational meeting of the directors was held and stock issued to all four stockholders and minutes of corporate meetings were prepared, although merely printed forms which were filled in. There was no documentation of the value of furniture and fixtures contributed by Foglesong or tools contributed by Bly making up the initial corporate contribution, nor was there any formal lease of the van Foglesong owned individually but used in the corporate business in return for its maintenance by the corporation. No written evidence of indebtedness existed between the corporation and the individuals as to various elements in extensions of credit, nor did any separate accounts receivable exist showing the status of the accounts between stockholders and the corporation. A separate bank account was maintained, and all of the funds processed through the corporate books and bank account, as contrasted with *Deeds* v. *Gilmer*, 162 Va. 157, 221, 258 (1934), where the corporate veil was pierced.

(2) *Non-payment of dividends.*

There is no evidence that any dividends were paid.

**(3)** *Solvency of the corporation at the time.*

There was no evidence that the corporation was insolvent when incorporated, although it probably was insolvent when Raub extended its credit. However, mere insolvency without misrepresentation thereof was held insufficient to justify piercing the corporate veil in *Garrett v. Ancarrow Marine, Inc.*, 211 Va. 755, 757 (1971).

**(4)** *Siphoning of funds from the corporation by the dominant stockholder.*

Mr. Foglesong probably was the dominant stockholder, but there is no evidence that he siphoned off corporate funds, certainly to the extent that the chief stockholder did in the *Cty. Green Ltd. Partnership, supra.*

**(5)** *Non-functioning other officers or directors.*

While it could be fairly said that the other three parties probably did not know everything that was going on in the corporation, and the relationship was quite informal, the facts do not show that they were ignorant of their relationship or that Foglesong ignored them. (In the *Cty. Green* case, at least one person listed as a corporate director did not even know it, *Id.*, at 707.)

**(6)** *Absence of corporate records.*

The picture this Court has of this corporation is typical of small, closely held family corporations: clearly inadequate records if it were a large, publicly held corporation. An effort was made to preserve some of the corporate formalities and provide a record of what the corporation had done. The evidence showed that the corporation was properly organized and structured, but the officers and directors probably did not follow through in keeping all the minutes and records they should have, but this alone would not be sufficient to strike down the corporate existence.

**(7)** *The corporation a sham or facade for the operation of its dominant stockholder.*

No evidence was introduced to establish this. On the surface, some of the facts might suggest an effort to mislead, the use of the van owned by the dominant individual stockholder but with the corporate name, and small, inconsequential personal loans to the stockholder and to friends of the stockholder (all of which were subsequently repaid). The evidence falls far short of showing that this corporation was being used as an instrument to defraud either the government, as in *Lewis Trucking Corp. v. Commonwealth*, 207 Va. 23 (1966) (a sham corporation organized to get the benefit of lower licensing fees on trailers in Delaware although operated from Virginia), or creditors, past or future, as in *Cty. Green*, where a dummy corporation was organized as general contractor by the property owner and used as an instrument to defraud the subcontractors. That corporation had only $100.00 in stated capital, never got a contractor's license and gratuitously reduced its general contract by several hundred thousand dollars at the request of the owners, they also being the directors and stockholders of the general contractor.

Looking at the totality of the circumstances, the Court concludes that this small, family held corporation, while not doing all that it should have done, has in no way defrauded or misled the plaintiff and the Court would not be justified in disregarding its corporate existence under these facts.