## CIRCUIT COURT OF FAIRFAX COUNTY

TQY Investments

v.

Rodgers Co., Inc.

October 22, 1991

Case No. (Chancery) 121734

BY JUDGE THOMAS J. MIDDLETON

On November 5, 1990, Rodgers Company, Inc. ("Rodgers") filed a memorandum of mechanic's lien against Bogle Group II ("Bogle"). Bogle subsequently changed its name to TQY, the petitioner in this case. TQY, in its Petition to Determine the Validity of the Mechanic's Lien, contends that the lien is invalid for the following reasons:

The written notice given to Bogle was insufficient;

The error in the affidavit accompanying the memorandum was fatal to perfection of the lien;

Rodgers is time-barred from enforcing the lien;

The description of the property included three acres of public land; and

Rodgers failed to comply with the terms of the contract.

For the reasons stated below, the mechanic's lien is valid.

I. *The subcontractor's written notice to Bogle on July 24, 1991, was sufficient.*

Although a *general contractor* need not give written notice to the owner in order to perfect a mechanic's lien, *see* Va. Code Ann. § 43–

4 (1990), a *subcontractor* must do so, *see* Va. Code Ann. § 43–7 (1990). Rodgers, as subcontractor, filed its memorandum against Bogle on November 5, 1990. On March 1, 1991, prior to the end of the six-month period for enforcing the lien, Bogle filed for bankruptcy, thus tolling the six-month statute of limitations. Va. Code Ann. § 43–17 (1990). Because of an address change, Bogle apparently did not receive *written* notice of the lien until July 24, 1991. Bogle admits, however, to having received *actual* notice much earlier. It is true that an owner's actual knowledge of a subcontractor's lien is no substitute for written notice in the absence of a waiver, *Coleman v. Pearman*, 159 Va. 72, 165 S.E. 371 (1932), *overruled on other grounds*, *Mills v. Moore's Super Stores*, 217 Va. 276, 227 S.E.2d 719 (1976), and failure to give any written notice at all would have been fatal to the lien. However, § 43–7 does not require that written notice be given within any specified time. Indeed, in *Mills*, the Virginia Supreme Court held that statutory time requirements for filing the memorandum were inapplicable to notice requirements, stating:

> *Coleman v. Pearman*, 159 Va. 72, 165 S.E. 371 (1932), relied on by the owners, is not controlling. In that case, the subcontractors never gave the written notices to the owners which we held were mandated by the statute. Our opinion stated, in dictum, that all statutory steps must be taken within the specified time in order to perfect a subcontractor's lien. This fundamental rule of statutory construction applies where a time is specified, *e.g.*, filing the memorandum within sixty days, but we are unwilling to extend it to an act for which no time limit for performance is specifically prescribed in the statute. To the extent, therefore, that *Coleman* indicates that the subcontractor's notice to the owner must be given within sixty days after construction is completed or the work otherwise terminated, it is hereby expressly disapproved.

*Mills*, 217 Va. at 280, 227 S.E.2d at 723 (1976).

Because Bogle had actual notice, the delay did not result in any prejudice. Indeed, Bogle filed its Petition to Determine the Validity of the Mechanic's Lien on June 19, 1991, more than one month before receiving written notice of the lien. Based on *Mills*, the notice was sufficient.

## II. *The error in the affidavit is not fatal to the lien.*

Section 43–7 of the Va. Code, in mandating compliance with Section 43–4, requires that the memorandum of mechanic's lien be verified under oath. Section 43–8 includes a sample affidavit and language that such an affidavit "shall be sufficient if substantially in [that] form and effect." TQY argues that the affidavit accompanying the memorandum is fatally defective in that it erroneously names Bogle Group II, L.P. (the owner), rather than Bogle Construction Co., Inc. (the general contractor) as the party indebted to the subcontractor. Within the same document, however, the memorandum and notice provisions correctly identify Bogle Construction Co., Inc., as the general contractor. In addition, the substantial identities of Bogle Group II and Boyle Construction make any confusion due to the error unlikely.

This court has previously ruled that a deficiency in the affidavit portion of the memorandum of mechanic's lien is not necessarily fatal to the lien. *See* Judge Kenny's opinion in *Weyant Bros., Inc. v. Calvert Constr. Co.*, 18 Va. Cir. 307 (Cir. Ct. of Fairfax County 1989) (mechanic's lien valid where the affidavit omitted the sum claimed, but where the memorandum included it); *see also* Judge Stevens' letter opinion in *R.G. Griffith, Inc. v. Great Falls W. Assoc.*, Chancery No. 119990 (Cir. Ct. of Fairfax County, May 15, 1991) (citing *Diebold v. Tatterson*, 115 Va. 766, 80 S.E. 585 (1914) (mechanic's lien valid where affidavit incorrectly listed the name of the claimant, but where the claimant's identity was clear from the document as a whole)). Because Bogle Construction's identity is clear from the entire document, the error in the affidavit is not fatal to the lien.

Section 43–15 of the Virginia Code provides in pertinent part:

No inaccuracy in the memorandum filed . . . shall invalidate the lien, if . . . the memorandum conforms substantially to the requirements of Sections 43–5, 43–8 and 43–10, respectively, and is not willfully false.

The affidavit conforms substantially to the requirements of Va. Code Ann. § 43–8 and is not willfully false. It therefore does not invalidate the lien.

**III.** *The filing of the bankruptcy petition tolls the time to file a Bill of Complaint to enforce the lien.*

A contractor *may not* file a Bill of Complaint to enforce a mechanic's lien against the owner after the owner has filed a bankruptcy petition. To do so would plainly violate the automatic stay provisions of 11 U.S.C. Sect. 362. *H.T. Bowling, Inc. v. Bain*, 52 Bankr. 58 (Bankr. W.D. Va. 1985), *aff'd sub nom. In re Bain*, 64 Bankr. 581 (Bankr. W.D. Va. 1986).

To protect the properly perfected lien creditor, the Bankruptcy Code provides for the tolling of the applicable statute of limitations until the later of the remainder of the statutory period or thirty days after notice of the termination or expiration of the automatic stay. 11 U.S.C. Sect. 108(c).

Rodgers filed its memorandum on November 5, 1990, after which it had six months to file a Bill of Complaint to enforce the mechanic's lien. Va. Code Ann. § 43–17 (1990). However, Bogle's bankruptcy petition of March 1, 1991, tolled the statute of limitations and prohibited Rodgers from filing a suit to enforce the lien. Under the Bankruptcy Code provisions, Rodgers has thirty days after the termination of the stay to file a bill to enforce the lien. 11 U.S.C. § 108(c).

**IV.** *The prior dedication to Fairfax County of an easement of three acres of the property does not invalidate the lien.*

One may not acquire a mechanic's lien on public property. *Hicks v. Roanoke Brick Co.*, 94 Va. 741, 27 S.E. 596 (1897). The question arises then whether or not the inclusion in the description of the property of three acres of land previously dedicated to Fairfax County invalidates the lien. For the following reasons, the description does not invalidate the lien.

A. *The three-acre parcel is not public property.*

TQY continues to hold the entire parcel in fee simple, since the deed of dedication grants only an easement to the county. The language of the deed of dedication is unambiguous:

> This deed further witnesseth that in consideration of the premises and the sum of One Dollar ($1.00), cash in hand paid, receipt of which is hereby acknowledged, the Owner does hereby grant and convey unto the County, its successors and assigns, the *easements* as hereafter set forth in the respective locations shown on the Plat as follows . . . .

Plaintiff's Exhibit 3 at 3 (emphasis added). In addition, the deed expressly reserves to Bogle/TQY the right to:

> construct and maintain roadways over the *easements* and to make any use of the land encumbered by the *easements* granted which may not be inconsistent with the rights herein conveyed, or interfere with the use of the *easements* by the County for the purposes named . . . .

*See* Plaintiff's Exhibit 3 at 5 (emphasis added).

TQY is the owner of the entire parcel of land in fee simple. Although the county has been granted certain easements over three acres of the land, the dedicated land is not "public property" that is exempt from a mechanic's lien.

**B. *Even if the three-acre parcel were public property, the dedication would not invalidate the lien.***

**1. *Rodgers never entered into a contract with Fairfax County or any other public entity.***

Courts applying the principle that a mechanic's lien cannot be acquired on public property ordinarily do so in situations where a public entity (i.e., a city, county, or state) owns the property and itself contracts for improvements on that property. *See, e.g., Phillips v. Rector and Visitors of University of Virginia*, 97 Va. 472, 34 S.E. 66 (1899) (lien denied where the state owned the land and contracted for university buildings); *and Fairbanks, Morse, & Co. v. Town of Cape Charles*, 144 Va. 56, 131 S.E. 437 (1926) (lien denied on waterworks where complainants furnished material to a contractor who was constructing waterworks for the town).

Rodgers never contracted with Fairfax County. Even the improvements on the dedicated land were made by Rodgers pursuant to its contract with Bogle. Unlike a situation where the contractor knows he is dealing with a public entity, Rodgers had no notice that some of his work might not be subject to a mechanic's lien. The public is not the creditor here and does not need protection. A private owner of land should not be able to avoid creditors by granting the public an easement over a portion of the land prior to defaulting on payments to his contractor.

**2. *A lien covering improvements on the nonpublic parcel would be unaffected by a dedication.***

**a. *A lien may attach to less than a whole parcel of land.***

Section 43-3 of the Va. Code provides that the mechanic's lien attaches only to the building or structure improved "and so much land therewith as shall be necessary for the convenient use and enjoyment thereof." It is clear from this language that a lien may attach to less than a whole parcel of land and that the inclusion of three acres of unliened property in the description does not in itself invalidate the lien.

      b. *This lien does not fall into one of the two categories of overbroad liens which Virginia courts have invalidated.*

The Virginia Supreme Court has invalidated overbroad or blanket liens in only two rather narrow situations: (1) where a single lien attempts to cover improvements made under two or more separate contracts, *United Masonry v. Jefferson Mews*, 218 Va. 360, 237 S.E.2d 171 (1977); and (2) where a lien covers two or more parcels of land and the mechanic has not worked on or added value to all the parcels, *Woodington Elec., Inc. v. Lincoln Savings & Loan Ass'n*, 238 Va. 623, 385 S.E.2d 872 (1989). Neither situation is applicable here. First, unlike the lien involved in *United Masonry*, Rodgers' lien covers work performed pursuant to a single contract between Rodgers and Bogle. Second, unlike the contractor in *Woodington*, Rodgers performed work on both the dedicated and the undedicated land and is claiming a lien only on improvements it did in fact make.

The Virginia Supreme Court recently stated in *Addington-Beaman Lumber Co. v. Lincoln Savings & Loan Ass'n*, 241 Va. 436, 440, 403 S.E.2d 688, 690 (1991):

> [T]he law is . . . settled that under certain circumstances, a joint and blanket lien is valid and the lien claimant has no duty to apportion in the memorandum the amount of the lien. *Such circumstances exist when there is a single contract for the entire work to be performed as a whole, and there are no provisions in the agreement allocating a specific portion of the contract price to any individual lot . . . . Typically, such a situation will arise if there is a contest involving contractors, subcontractors, and owners when no interests of third parties are implicated* (emphasis added).

Such circumstances exist in this case, and the lien is not invalid for overinclusiveness.

*c. The description in the memorandum reasonably identifies the property.*

TQY argues that the inclusion of the three acres of public land in the description of the property is fatal to the lien under Va. Code Ann. § 43–15, which provides in pertinent part:

> No inaccuracy . . . in the description of the property covered by the lien shall invalidate the lien, if the property can be reasonably identified by the description given and the memorandum conforms substantially to the requirements of § 43–5, § 43–8, and § 43–10, respectively, and is not willfully false.

The memorandum correctly identifies the deed book and page where the property can be found, as well as the street address of the property. The Virginia Supreme Court held such a description to be sufficient in *Penrod & Stauffer Building Systems, Inc. v. Metro Printing & Marking Services, Inc.*, 229 Va. 150, 326 S.E.2d 662 (1985). Even assuming *arguendo* that the three acres were public property, the inclusion of those acres in the description would not invalidate the lien, since the property can be reasonably identified from the description given.

*3. A lien covering improvements on the public parcel may attach to the nonpublic parcel under Virginia's extraterritorial lien statute.*

Va. Code § 43–3(b) clearly contemplates extraterritorial liens, or liens which attach to a portion of the land other than the improved "public" lands. Section 43–3(b) provides in pertinent part:

> Any person providing labor or materials for the installation of streets, sanitary sewers or water lines for the purpose of providing access or service to the individual lots in a development . . . shall have a lien on each individual lot in the development for that fractional part of the total cost of labor or materials as is obtained by using "one" as the numerator and the number of lots as the denominator . . . .

TQY's property has not been subdivided. There being only one "lot," the whole cost of labor and materials for improvements on the streets, etc., may be placed on that one lot, both the numerator and the denominator being "one."

TQY cites *Rosser v. Cole*, 237 Va. 572, 379 S.E.2d 323 (1989), as authority for invalidating an extraterritorial lien. But *Rosser* is distinguishable from this case. The *Rosser* court invalidated a mechanic's lien by which a contractor who had built a *subdivision* street claimed a blanket lien on the total value of his services upon the entire property owned by the developer. Key to the court's reasoning was the fact that the contractor in *Rosser* had failed to apportion his claim among the subdivision lots as required by Va. Code Ann. 43–3(b). The court worried that a blanket lien on subdivided property would constitute a "secret, floating lien, not recorded in the chains of title to the individual lots," noting that the extraterritorial lien provision in § 43–3(b) is "carefully conditioned to minimize danger to purchasers without notice and other innocent third parties." *Rosser*, 237 Va. at 578, 379 S.E.2d at 326. Apportionment among subdivision owners is necessary so that a subsequent purchaser of one of the lots can know the amount of the lien on that lot. Where, as in the present case, the property has been neither subdivided nor sold, problems of notice are nonexistent.

This case is also distinguishable from *West Alexandria Properties v. First Virginia Mortgage*, 221 Va. 134, 267 S.E.2d 149 (1980). In that case, as here, a contractor sought to enforce a mechanic's lien on certain property a portion of which had been dedicated to the public. Although the Virginia Supreme Court did not invalidate the lien, it did limit its enforcement to the value of the work done on the undedicated land. But *West Alexandria Properties* involved land that had been sold to a third party not in privity with the contractor. The court reasoned:

> An owner of several lots subject to a lien is benefited when a lienor releases a lot, and he has no reason to complain that the full burden of the lien is shifted to his remaining lots. But when third parties have interests in remaining lots, such a shift would injure their interests by encumbering those lots with liability for a disproportionate share of the debt claimed in the memorandum of lien . . . . It is plain, therefore, that FVM [the subsequent purchaser], which was never in contractual privity with WAPI [the contractor], is a third party whose fee simple interest in the land remaining after the dedication would be injured by enforcement of the lien.

221 Va. at 141–42, 267 S.E.2d at 153.

It would appear from the above that had no third party been affected, the Virginia Supreme Court would shift the entire amount of the lien to the undedicated portion. In the present case, that is exactly the situation. Bogle/TQY, who is in privity of contract with Rodgers, still owns the entire property, and no third party is affected. Following the *West Alexandria Properties* reasoning, Bogle/TQY cannot now be heard to complain if the full burden of the lien is shifted to the undedicated land.

Since no third party will be prejudiced by it, the entire amount of the lien may attach to the undedicated portion of the land. This would be true even if the three-acre parcel were public property and even though some of the improvements were made on that three-acre parcel.

V. *Rodgers did not breach the contract and did not forfeit its mechanic's lien remedy.*

TQY asserts in its Memorandum of Points and Authorities that because Rodgers failed to comply with the terms of the contract, specifically, that because Rodgers ceased performance without giving Bogle seven-days' notice, the mechanic's lien is unavailable. TQY relies on § 4.7.1 of the Contract which states:

> *Remedies for Nonpayment.* If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven days from the time payment should be made as provided in this Agreement, the Subcontractor may, *without prejudice to other available remedies,* upon seven additional days' written notice to the Contractor, stop the Work of this Subcontract until payment of the amount owing has been received (emphasis added).

TQY's argument has no merit.

> Contracts sometimes provide a remedy or remedies to which the parties may resort upon breach thereof. If the contract specifically provides that the remedies enumerated shall be the only course of settlement, a party to it is limited to the remedies mentioned. Where, however, there is no limitation in the contract which makes the remedies enumerated therein exclusive, a party is entitled to the remedies thus specified, or he may at his election pursue any other remedy which the law affords.

1 Am. Jur. 2d, *Actions*, § 31 (1962) *(quoted in Mann v. Golub*, 384 S.E.2d 847 (W. Va. 1989)). Since the contract expressly provides that the contract remedy is "without prejudice to other available remedies," Rodgers' mechanic's lien remedy is not affected by § 4.7.1 of the contract. For all the foregoing reasons, this court finds the mechanic's lien to be valid.